ANNUNZIATA, Judge.
Vahid Mohajer appealed his convictions by a jury of forcible sodomy and animate object penetration, contending the trial court erred (1) in allowing the Sexual Assault Nurse Examiner (“SANE”) to state an expert opinion regarding the cause of Ward’s injuries, and (2) in finding the evidence sufficient to support the convictions. A divided panel of this Court affirmed Mohajer’s convictions. We granted a petition for rehearing en banc and stayed the mandate of the panel decision. Upon rehearing en banc, we affirm the trial court.
I. BACKGROUND
Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va.App. 154, 156, 493 S.E.2d 677, 678 (1997).
So viewed, the evidence established that Miranda Ward, an eighteen-year-old high school student, took her friend, Josh Whitlow, to Ana Visage Skin and Body Care. As a graduation present, Ward had arranged for the two to receive their first professional massages. They arrived at approximately 6:00 p.m. and were greeted by two women, one of whom was the owner. The owner escorted Ward and Whitlow to separate massage rooms, located across the hallway from one another.
*316 Ward and Whitlow were instructed to take off their clothes and cover themselves with wrap-around towels. They complied as directed. At first, Ward shared her friend’s room, where the two sat in the sauna for several minutes and drank a glass of champagne. Next, Ward was escorted back to her room, while Whitlow remained in his room. Ward was instructed to lie on the massage table. Mohajer entered shortly thereafter. Mohajer was introduced to Ward as “Steve” and informed that he would perform her massage.
At the beginning of the session, the door to Ward’s room remained slightly ajar. She and Whitlow were able to converse freely from their respective rooms, and often called out to one another inquiring as to how the other’s treatment was proceeding. Mohajer also made small talk with her, representing to her that he was a police officer and showing her what he purported to be his police badge. His representation, which later proved to be false, made her feel “comfortable” with him at the time.
After about thirty minutes had elapsed, Whitlow was placed in another room, which precluded further communication between the two. At that point, Mohajer closed the door to Ward’s room so he and Ward were alone. As Mohajer continued the massage, he moved his hands down to Ward’s chest, and continued to move his hands downward, until he reached Ward’s breast area and began to massage her breasts. Ward testified that she did not know “if that was supposed to be happening because [she] wasn’t sure you were supposed to get that done when you were getting a massage.” Ward soon realized that something was wrong, “because [Mohajer’s] hands started getting a tighter grip to them and he started squeezing them harder.... ” Ward testified that she was confused at that time and did not know “how she was supposed to react or what [she] was supposed to do.”
Next, Mohajer walked to the right side of the massage table and began massaging Ward’s leg. He massaged in an upward direction until his hand reached her vagina. Mohajer then inserted first one finger, and then two fingers into Ward’s *317 vagina. Ward testified that at that point, “[her] body just— [she] didn’t know what to do and it just locked down.” She stated, “I remember clutching my fist and I was crying, and I just started praying and I was just like, God, please stop. I didn’t know what to do because I didn’t know how to react to it. I was scared to death.” The expert who examined Ward testified that she observed, with her naked eye, a large abrasion on the inside portion of Ward’s labia minora that was consistent with non-consensual object penetration of her vagina.
Mohajer stopped and walked to the head of the table again, next to Ward’s shoulder. He grabbed her head and turned it, and Ward saw that his pants were unbuttoned and unzipped. Mohajer then pulled out his penis. Ward “tried to turn [her] head and tried to fight it off,” but testified, “I don’t know, there was something in me that I couldn’t do it.” Mohajer again turned Ward’s head, and proceeded to hit her in the face with his penis until he “shoved it into [her] mouth.” After he climaxed, Mohajer walked to the other side of the table to wipe his hands. Ward turned to her side and curled up into a ball.
After approximately five minutes had passed, one of the employees walked into the room and told Ward that “time was up.” Mohajer left the room. Ward and Whitlow then left and went to their respective homes. Later that evening, Ward told her mother about what had occurred, and her mother called the police.
Detective James C. Hepler, of the Fairfax County Police Department, came to Ward’s home, where he spoke with her and then took her to Fairfax Hospital. She underwent a physical examination, performed by Suzanne Brown, a registered nurse, and coordinator of the hospital’s SANE program. In the course of the examination, Brown observed an abrasion to the inside portion of Ward’s labia minora.
On July 27, 1999, Detective Hepler went to the spa and interviewed Mohajer. Mohajer denied any inappropriate contact with Ward. Mohajer ultimately provided a DNA sample *318 to the police. The sample tested as a positive match to a DNA sample taken from Ward. Mohajer was subsequently indicted for forcible sodomy and animate object penetration.
Prior to trial, Mohajer filed a motion in limine seeking to bar Brown from offering expert testimony “as to causation of the alleged abrasion” to Ward’s vaginal area. Mohajer renewed his motion prior to Brown’s testimony, arguing that Brown could not testify as to whether Ward sustained digital penetration and that only a medical doctor could testify as to the causation of Ward’s injury. The trial court agreed that Brown could not testify as to digital penetration, but denied the motion to the extent it sought to limit such testimony to medical doctors, stating:
I don’t think “medical professionals” are limited to doctors in any case other than a medical malpractice case, where the Statute says they’re limited to doctors. Other than that, an expert is an expert. It can be a doctor, it can be someone else....
ífc
But if she is qualified, she is permitted to testify as to whether it is inconsistent with consensual sexual relations, and that would be permissible under the case law in Virginia.
Following a recitation of her qualifications,[1] the trial court accepted Brown as an expert qualified to render an opinion in the area of “medical evidence gathering in sexual assault cases.”
Brown testified that in cases where she examined a patient alleging sexual assault, she routinely examined the vagina for abrasions, transections, tears and/or redness or discharge in *319 the area. She stated that such injuries were significant in cases involving allegations of non-consensual sexual contact because “[in circumstances] where there are injuries present, it is because of the lack of human sexual response.... ” She explained that “[i]n women who are engaging in consensual activities, the body will automatically change to adapt to the consensual relationship. The labia ... [and] the labia minora ... will become engorged, so they’ll get larger and flatten out a little bit to prevent injuries to those areas.” She further testified that “[m]any times with object penetration you can see injuries more on the lateral aspects of the vaginal area,— lateral being on the sides of the vagina. With penile penetration, typically you see injuries more posteriorly on the bottom of the hymen or the labia.”
When questioned by Mohajer’s counsel on cross-examination as to whether the injury she observed could have been sustained in a consensual encounter, Brown stated, “[u]sually not these injuries that are these [sic] large. Usually its macro-trauma, which is what I saw, is visual [sic] to the naked eye.” Brown conceded that injuries can occur in consensual situations, but that such injuries are “[u]sually small micro-trauma that you can’t see with the naked eye, just under magnification.” Brown finally testified that in rare cases, one can see an injury caused by a consensual encounter with the naked eye and that in rare cases, even with proper lubrication, an individual can sustain injury.
In his case-in-chief, Mohajer testified in his own defense, conceding that he had lied to Detective Hepler. However, Mohajer claimed that the incident with Ward was entirely consensual.
At the close of the Commonwealth’s case and again at the close of the evidence, Mohajer moved to strike, arguing that the Commonwealth had failed to establish that the acts occurred against Ward’s will by threat, force or intimidation. The trial court denied the motion, finding the evidence sufficient on both counts for the jury to consider.
*320 The jury ultimately convicted Mohajer on both counts. Mohajer was sentenced to five years, with four years suspended on the count of animate object penetration, and five years, with two years suspended on the count of forcible sodomy.
II. ANALYSIS
A. ADMISSIBILITY OF EXPERT OPINION
On appeal, Mohajer contends the trial court erred in allowing the SANE nurse to “state an expert medical opinion regarding the cause of Ward’s injuries.” “[W]hether a witness is qualified to render an expert opinion is a question submitted to the sound discretion of the trial court.” Combs v. Norfolk and Western Ry. Co., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998) (citations omitted). Nevertheless, “[t]he record must show that the proffered expert witness has sufficient knowledge, skill, or experience to render [her] competent to testify as an expert on the subject matter of the inquiry.” Id. (citations omitted). Mohajer does not contest Brown’s qualifications to testify concerning matters of “medical evidence gathering in sexual assault cases.” Instead, Mohajer argues that Virginia law prohibits Brown from providing expert testimony in a sexual assault case, because such testimony constitutes the practice of medicine, citing Code §§ 54.1-2900 through 54.1-2973. Further, Mohajer states that “diagnosis of the victim’s injuries” does not fall within the non-discretionary tasks that registered nurses in the Commonwealth are able to perform pursuant to Code §§ 54.1-3000 and 54.1-2901.
Contrary to Mohajer’s assertion, the Supreme Court of Virginia has recently held that testimony of a SANE nurse regarding the causation of physical injuries to a victim of a sexual assault is not the practice of medicine as contemplated by Code § 54.1-2900. Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). Accordingly, a SANE nurse need not be licensed to practice medicine to express an expert opinion on the causation of the injuries in the context of an alleged sexual assault. See id. Furthermore, Brown offered her expert opinion as to Ward’s injuries in terms of *321 whether or not her injuries were consistent or inconsistent with consensual sexual intercourse. Brown offered no “diagnosis” of Ward’s injuries, nor in offering her testimony did she act outside the statutory definition of the duties of a registered nurse. See id. Thus, we affirm the decision of the trial court on this issue.[2]
B. SUFFICIENCY OF THE EVIDENCE
Mohajer next argues the Commonwealth failed to establish the acts of sodomy and animate object penetration were accomplished against Ward by intimidation or force. See Code § 18.2-67.1.[3] We disagree. On review of a claim asserting the sufficiency of the evidence, “ ‘this Court does not substitute its judgment for that of the trier of fact. Instead, the [verdict] will not be set aside unless it appears that it is plainly wrong or without supporting evidence.’ ” Jett v. Commonwealth, 29 Va.App. 190, 194, 510 S.E.2d 747, 748 (1999) *322 (quoting Canipe v. Commonwealth, 25 Va.App. 629, 644, 491 S.E.2d 747, 754 (1997)).
1. Forcible Sodomy
Ward testified that Mohajer “grabbed her head and turned it” toward him. Ward stated she “tried to turn [her] head and tried to fight [the attack] off,” but could not bring herself to do so. Then, Mohajer turned her head toward him again and proceeded to hit her in the face with his penis until he “shoved it into [her] mouth.” We find that, on this evidence, the jury could have reasonably concluded that Mohajer perpetrated the sodomy by force. Thus, we affirm his conviction on this count.
2. Animate Object Penetration
In addition, we find the evidence was sufficient, as a matter of law, to prove beyond a reasonable doubt that Mohajer used intimidation to accomplish animate object penetration, and we affirm his conviction of the charge.
Intimidation may occur without threats. Intimidation ... means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will.
Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985); accord Commonwealth v. Bower, 264 Va. 41, 44, 563 S.E.2d 736, 737 (2002).
The circumstances surrounding the assault establish that Ward was in a vulnerable position. “Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.” Sutton, 228 Va. at 663, 324 S.E.2d at 670. When Mohajer entered the massage room, Ward was lying on a table, naked except for a towel wrapped around her body. Mohajer falsely represented to her that he was a police officer and showed her what he asserted was a police badge, thereby making Ward feel “comfortable.” As Mohajer began to massage her breasts, he started to “get a tighter grip” and *323 “squeezed] them harder.” Ward testified that she was confused and did not know “how she was supposed to react or what [she] was supposed to do.” Ward was naked and alone in the presence of someone she believed she could trust — a masseur and police officer — and whom she allowed to touch her body only because of his position as masseur. These circumstances left her vulnerable and susceptible to the psychological pressure and control exercised by Mohajer in committing the assault.
Mohajer’s actions “frightened” Ward to the point that her body “just locked down.” During the incident, she cried, clutched her fist, and prayed he would stop. She testified that after he touched her breasts without her consent, she was “scared to death,” because she “had no idea what was going to happen next.” Ward thus feared the harm inherent in Mohajer’s assault, viz., bodily harm. See Bower, 264 Va. at 45, 563 S.E.2d at 738 (holding that fear of sexual assault is sufficient to prove fear of bodily harm because “[s]exual assaults are assaults against the body of the victim [and] are violent acts which common knowledge tells us inflict bodily hurt on the victim”). The evidence thus clearly establishes that Mohajer’s conduct intimidated Ward, put her in fear of bodily harm inherent in such an assault, and overbore her will. See Sutton, 228 Va. at 663, 324 S.E.2d at 670.
Considering the totality of the circumstances, notably Ward’s statements of fear, the vaginal injury she sustained, and the vulnerable position in which she was placed, a reasonable juror could infer that Mohajer “put [Ward] in fear of bodily harm” and intimidated her into submission. Id.; see also Bower, 264 Va. at 45, 563 S.E.2d at 738. Accordingly, we affirm his conviction for animate object penetration.

Affirmed.

. Brown testified that she was a registered nurse for over twenty years; completed a certificate program to become a sexual assault nurse examiner, which included over a thousand hours of training; taught between one thousand and fifteen hundred hours of sexual assault nurse examiner continuing education training; conducted some thirteen hundred patient examinations over a nine-year period; and has been recognized as an expert by the courts of the Commonwealth on over one hundred and fifty occasions.

. Although Mohajer arguably raised before the trial court the issue of whether Brown’s testimony invaded the province of the jury by offering an opinion as to an ultimate issue of fact at trial, he raises no such argument on appeal. Accordingly, we do not address the issue here. See Bennett v. Commonwealth, 35 Va.App. 442, 452, 546 S.E.2d 209, 213 (2001).

. Code § 18.2-67.1 provides, in relevant part:
A. An accused shall be guilty of forcible sodomy if he or she engages in ... fellatio ... with a complaining witness who is not his or her spouse ... and
2. The act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person, or through the use of the complaining witness’s mental incapacity or physical helplessness.
Similarly, Code § 18.2-67.2, states, in relevant part:
A. An accused shall be guilty of inanimate or animate object sexual penetration if he or she penetrates the labia majora or anus of a complaining witness who is not his or her spouse with any object, other than for a bona fide medical purpose, ... and
2. The act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person, or through the use of the complaining witness's mental incapacity or physical helplessness.