COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


JAMES DILLINGHAM

MEMORANDUM OPINION[*] BY
v. Record No. 0373-10-1 JUDGE ROSSIE D. ALSTON, JR.
MAY 24, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

Charles E. Haden for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appel1ee.


James Dillingham (appellant) appeals his convictions for forcible sodomy in violation of

Code § 18.2-67.1, rape in violation of Code § 18.2-61, and abduction with intent to defile in

violation of Code § 18.2-48. On appeal, appellant contends that the evidence was insufficient to

sustain his conviction for each offense. Specifically, appellant alleges that the trial court erred in

crediting the testimony of the victim and rejecting evidence that appellant's sexual encounter

with the victim was consensual. For the reasons that follow, we assume without deciding that

the issue was preserved and hold that the evidence was sufficient to support appellant's

convictions for the offenses charged. Therefore, we affirm appellant's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence indicated that in September 2007, the victim in this case was a student in a class on private investigation taught by appellant. In late September 2007, appellant, the victim, and the victim's mother, Ruth Mattocks (Mattocks), attended a private investigation convention in Las Vegas.

On October 1, 2007, the victim was traveling to Richmond, Virginia, when she discovered that she had missed a traffic court date in Newport News, Virginia, and that a capias had been issued for her arrest. The victim called appellant to ask his advice on how to handle the situation. When the victim called appellant, Mattocks was present, and, through the use of the victim's speaker-phone, the call was audible to both the victim and Mattocks. According to the victim and Mattocks, appellant told the victim she should come to his office in Newport News immediately so he could assist her. Bonnie Montgomery, another student in the private investigation class, was present in appellant's office during the phone call. She overheard appellant tell the victim to come to his office quickly.

The victim arrived at appellant's office around 1:00 p.m. Appellant made several phone calls in an effort to resolve the victim's problem. While appellant and the victim were waiting for a return phone call from the victim's attorney in her traffic violation case, appellant told the

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

victim that he had to "arrest [her] in order to unarrest [her]." According to the evidence presented at trial, appellant removed a set of handcuffs from the side of his pants, read the victim her rights, handcuffed her, and had her sit on a couch. After this "arrest" the victim called Mattocks and explained that she was in handcuffs and under arrest. According to Mattocks, appellant took the phone and told her that he "had to arrest [the victim] to unarrest her" in order to assist her with the capias that had been issued for her arrest.

After speaking with Mattocks, appellant repeatedly asked the victim how she planned to repay him for preventing her from going to jail. The victim offered to buy appellant lunch; however, appellant replied he had already eaten and that the victim should think about what she could do for him. Appellant then grabbed the victim's arm, pulled her over to a desk, and placed her face-down over the desk. The victim struggled against appellant and attempted to stand up. Appellant pushed the victim down so she could not stand and began to have vaginal intercourse with the victim. Appellant then asked the victim whether she was "on birth control." When the victim replied that she was not, he moved her back to the couch and forced her to perform fellatio on him. As appellant attempted to place his penis into the victim's mouth, the victim clenched her mouth shut and moved and turned her head to resist appellant's actions. The victim also repeatedly said, "No" and "No[,] I don't want to do it." Despite the victim's resistance, appellant successfully forced his penis into the victim's mouth.

Approximately five or ten minutes later, appellant removed the handcuffs from the victim. Appellant then received a phone call and told the victim he had to leave. Appellant let the victim go, and the victim left his office. The victim then called Mattocks and her boyfriend and told them she had been raped. Mattocks called appellant, asking him whether he had handcuffed and had sex with the victim. Appellant responded that he and the victim were "just playing." After calling Mattocks, the victim went to a hospital where a sexual assault nurse

examined her. The nurse found injuries to the victim's vagina that were sustained within the previous 24 to 48 hours and a foreign substance near the victim's mouth. The victim told the nurse about her encounter with appellant, including the fact that she had been handcuffed. In addition, the victim told the nurse that she had consensual sexual intercourse with her boyfriend the day before appellant assaulted her. The nurse was not able to determine whether the victim's injuries were sustained during appellant's assault on the victim or during her previous consensual sexual encounter with her boyfriend.

At trial, appellant admitted engaging in oral sex with the victim but claimed it was consensual. According to appellant, the victim and appellant were involved in a romantic relationship that began while the victim was a student in appellant's class. Appellant claimed that the victim was the instigator of the romantic and sexual relationship and that, on October 1, 2007, appellant repeatedly told the victim not to come to his office but eventually relented and told the victim she could come to his office. According to appellant, when the victim arrived, she became upset when she learned appellant was married and that appellant might not offer her a job with his company. Appellant argued that the victim falsely claimed he had raped her as a result of all these circumstances.

During the trial, several students who attended appellant's private investigation class with the victim testified that there was no indication that the victim and appellant were romantically involved. These students also testified that appellant made inappropriate and sexually explicit comments during or after class. The victim and Mattocks also testified that the victim and appellant were not romantically involved.

Appellant presented evidence at trial that contradicted victim's version of events. Several witnesses and appellant testified that appellant owned only one pair of black handcuffs at the time of the assault, which were broken. This was contrary to the victim's testimony, as she

testified she was handcuffed using a pair of silver handcuffs. The silver handcuffs were never found. In addition, appellant presented the testimony of Stanley Los, who had telephoned appellant during the approximate time of the assault. Los testified that he heard a female voice in the background when he called appellant and that the voice sounded cheerful and lighthearted. Finally, appellant introduced phone records into evidence showing numerous calls between the victim and appellant, which appellant argued supported his claim that he and victim were romantically involved.

Appellant also attacked the victim's credibility. At trial, the victim admitted that she had made a false report to the police in 2002, when she was fifteen years old, claiming that a stranger had abducted and raped her. According to the victim, she admitted to police within ten minutes of questioning that although she had been sexually assaulted against her will, she in fact knew her assailant and had not been abducted. This matter never went to trial. Appellant also argued that the victim was not credible because she claimed she did not have notice of her court date in her traffic infraction case despite having signed a form notifying her of the court date. Moreover, appellant contended the victim's testimony was not credible because, according to appellant's evidence, the victim claimed that she was not employed on a form requesting court-appointed counsel in the traffic case, despite the fact that she was employed by Mattocks. In rebuttal, the victim responded that she had not claimed to be unemployed and that the clerk of court had simply filled out the form incorrectly.

In finding appellant guilty, the trial court credited the testimony of the victim and Mattocks and discredited appellant's testimony. The trial court found that appellant and the victim were not romantically involved, that the victim went to appellant's office on October 1, 2007, for appellant's assistance with the capias for her arrest, that appellant handcuffed the victim, stating that he needed to arrest her before he could "unarrest" her, that appellant

vaginally and orally penetrated the victim, and that the victim consented to neither vaginal penetration nor oral sex with appellant. The trial court specifically rejected appellant's testimony, stating that it "was like a memorized script that had been . . . rehearsed." After sentencing, this appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the evidence was insufficient to support his conviction because the trial court erred in crediting the victim's testimony and rejecting appellant's evidence that the sexual encounter was consensual.[2]

To sustain appellant's conviction for forcible sodomy under Code § 18.2-67.1, the evidence must show that appellant accomplished the proscribed act, here fellatio, by penetrating the victim's mouth with his penis without the victim's consent and through the use of "force, threat or intimidation." Code § 18.2-67.1; Ashby v. Commonwealth, 208 Va. 443, 444, 158

---

[2] The Commonwealth argues that appellant failed to preserve this issue for appeal under Rule 5A:18. Although appellant did not state his objection to the sufficiency of the evidence to support his conviction with the clarity that is generally desirable to ensure the preservation of the issue for appeal under Rule 5A:18, for the purposes of this matter we will assume without deciding that the issue has been properly preserved.

Rule 5A:18, as in effect at the time of appellant's trial, provided that "[n]o ruling of the trial court . . . shall be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." "In a trial without a jury . . . where sufficiency of the evidence is challenged in defense counsel's closing argument it may be properly preserved for appeal." Fortune v. Commonwealth, 14 Va. App. 225, 227, 416 S.E.2d 25, 27 (1992).

Appellant relies upon his closing statement at trial, in which he argued that the victim's testimony was not credible and was contradicted by other witnesses and evidence, to support the preservation of his assignment of error on appeal. However, "[n]ot every closing argument accomplishes this objective. A closing argument may address other issues . . . [such as] the weight of the evidence." Campbell v. Commonwealth, 12 Va. App. 476, 481, 405 S.E.2d 1, 3 (1991) (en banc). While appellant's statements at trial arguably were mere challenges to the weight of the evidence, appellant did state that the victim's testimony was "absolutely incredible." Because this statement reasonably suggests that appellant was arguing, beyond the mere weight of the evidence, that the evidence was inherently incredible and thus insufficient to support his conviction, we will assume without deciding that the issue has been properly preserved.

S.E.2d 657, 658 (1968). Similarly, to sustain appellant's conviction for rape under Code § 18.2-61, the evidence must show that appellant had sexual intercourse with the victim "against the [victim's] will, by force, threat or intimidation . . . ." In this regard, "'[p]enetration by a penis of a vagina is an essential element of the crime of rape; proof of penetration, however slight the entry may be, is sufficient.'" Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997) (quoting Elam v. Commonwealth, 229 Va. 113, 115, 326 S.E.2d 685, 686 (1985)). Finally, to sustain appellant's conviction for abduction with intent to defile under Code § 18.2-48, the evidence must show that appellant physically detained the victim by force, intimidation, or deception with the intent to "sexually molest" the victim. Simms v. Commonwealth, 2 Va. App. 614, 617, 346 S.E.2d 734, 735 (1986); Fitzgerald v. Commonwealth, 223 Va. 615, 632, 292 S.E.2d 798, 808 (1982) (holding that "defile" and "sexually molest" are interchangeable within the meaning of Code § 18.2-48). There is no need to prove asportation of the victim from one place to another to support a conviction of abduction under Code § 18.2-48. Simms, 2 Va. App. at 618, 346 S.E.2d at 736.

At the outset, we reject appellant's initial argument that the evidence was insufficient to support his convictions for rape and forcible sodomy because the Commonwealth failed to present "eyewitnesses to the alleged sexual assault or other circumstantial evidence that would corroborate" the victim's testimony. Appellant concedes on brief that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." Wilson v. Commonwealth, 46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005). Therefore, a lack of eyewitness testimony or other circumstantial evidence corroborating the victim's testimony does not, by itself, render the evidence insufficient to support appellant's conviction.

Appellant argues that the evidence was nevertheless insufficient to support his convictions because the trial court erred in crediting the victim's testimony and discrediting

appellant's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The conclusions of the fact finder on issues of witness credibility "may only be disturbed on appeal if this Court finds that [the witness'] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).

In the instant case, the trial court specifically found the victim's testimony credible while rejecting appellant's testimony. In reaching this determination, the trial court considered the victim's demeanor while testifying. In addition, the trial court heard and considered the evidence that the victim had inaccurately completed a form for court-appointed counsel in her traffic violation case and had filed a 2002 complaint of rape that was, at least in part, false. Notwithstanding this evidence, the trial court ultimately determined that the victim's testimony was credible.

Moreover, despite the fact that corroboration is not required to support appellant's conviction, Wilson, 46 Va. App. at 87, 615 S.E.2d at 507, the victim's testimony was in fact corroborated by the testimony of Mattocks and other students in the private investigation class. Several students in the private investigation class testified that, to their knowledge, appellant and the victim were not romantically involved. Mattocks testified that the victim told her that appellant had handcuffed her to "arrest her and then unarrest her." In addition, Mattocks testified that when she asked appellant about his sexual contact with the victim on October 1, 2007, he responded, "[W]e were just playing." The trial court credited Mattocks' testimony and

found that appellant's response was not that of "someone who is in a consensual relationship for three or four weeks" as appellant had claimed.

Thus, the victim's testimony was neither inherently incredible nor so contrary to human experience as to render it unworthy of belief. "'To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as the existence and meaning of which reasonable men should not differ.'" Simpson v. Commonwealth, 199 Va. 549, 558, 100 S.E.2d 701, 707 (1957) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)); accord Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006). Here, the trial court found that the victim's demeanor suggested that her testimony was truthful. Furthermore, the testimony of other students in the private investigation class and Mattocks corroborated the victim's testimony. Finally, the evidence that appellant and the victim had a past romantic relationship was, at best, in conflict; such evidence does not render the victim's testimony inherently incredible. See Good v. Dyer, 137 Va. 114, 139, 119 S.E. 277, 284 (1923) (stating that although the evidence was conflicting "there was nothing inherently incredible in the testimony of and for the plaintiff"). As the finder of fact, the trial court resolved the conflicting evidence by crediting the testimony of the victim and other witnesses for the Commonwealth and discrediting appellant's testimony. We will not disturb this finding on appeal. See Gray v. Commonwealth, 184 Va. 236, 238, 35 S.E.2d 65, 65 (1945) ("In conflicts of evidence or testimony we follow the [finder of fact].").

In light of the credited evidence presented, we hold that the evidence was sufficient to sustain appellant's convictions for forcible sodomy in violation of Code § 18.2-67.1, rape in violation of Code § 18.2-61, and abduction with intent to defile in violation of Code § 18.2-48. The victim testified that appellant handcuffed her, placed her face-down over a desk, pushed her down so she could not stand up, vaginally penetrated her without her consent, and forced her to

perform fellatio on him without her consent. Because appellant penetrated the victim both vaginally and orally without her consent and through the use of force, despite her physical resistance, the evidence was sufficient to show that appellant committed rape and forcible sodomy. See Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979) ("To determine whether the element of force has been proved in the crimes of non-statutory rape and sodomy by force, the inquiry is whether the act or acts were effected with or without the victim's consent."); Johnson v. Commonwealth, 5 Va. App. 529, 534, 365 S.E.2d 237, 240 (1988) (holding that a conviction for sexual battery requires proof of "some force . . . to overcome the will of the complaining witness"); see also Mohajer v. Commonwealth, 40 Va. App. 312, 322, 579 S.E.2d 359, 364 (2003) (*en banc*) (holding that the evidence was sufficient to support the defendant's conviction for forcible sodomy under Code § 18.2-67.1 where the defendant grabbed the victim's head and turned it toward him as the victim attempted to turn her head and fight off the attack and then hit the victim in the face with his penis until he "shoved it into [her] mouth"). Furthermore, the evidence was sufficient to support appellant's conviction for abduction with intent to defile. Appellant physically detained the victim by force when he handcuffed her, see Simms, 2 Va. App. at 618, 346 S.E.2d at 736; moreover, on appeal, appellant does not contend that he lacked the requisite intent to defile, and evidence of appellant's statements and subsequent actions was sufficient to show his intent to sexually molest the victim.

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.