KITCHENS, Justice,
dissenting:
¶ 18. Because I do not agree that nurses invariably should be excluded from testifying in Mississippi courts as expert witnesses on issues of medical causation, I respectfully dissent.
¶ 19. During the course of Conner’s suit against Mid-South for medical negligence associated with the intravenous (IV) dose of Visudyne administered to her on April 10, 2003, Conner designated LaDonna Northington, R.N., as her expert witness. In her affidavit, Nurse Northington attested that she was familiar with the appropriate standard of nursing care with regard to IV placement, and with complications such as infiltrations. She also attested that, based on her education and experience as a nurse and nursing professor, a review of Mid-South’s medical records, and the depositions of Dr. Priester (Con *1054 ner’s treating physician at Mid-South), Bernice Conner, and Nurse Marilyn Hampton (the nurse who administered the Visudyne IV), she was of the opinion that Mid-South was negligent in the care provided to Bernice Conner on or about April 10, 2003, and that such negligence was a violation of the applicable standard of care with regard to the IV administration of Visudyne and the requisite followup care. Nurse Northington specifically noted that Mid-South’s failure to document the manner and method in which the IV was placed and monitored was below the applicable standard of care and that there was no evidence the infiltration site had been bandaged to prevent incidental exposure to sunlight. Finally, she opined to a reasonable degree of medical probability that the enumerated negligent acts had caused or contributed to the injury and scarring suffered by Conner.
¶ 20. Following the trial court’s granting of Mid-South’s motion for summary judgment, based on Conner’s failure to establish a prima facie case of medical malpractice, Conner filed a motion to reconsider with an attached supplemental affidavit from Nurse Northington. In her supplemental affidavit, Nurse North-ington opined that, based on her experience as a nurse and nursing professor, there was nothing unique or different about administering Visudyne as opposed to other IV drugs, with the exception of the need to instruct the patient to stay out of the sun. She further stated that “the risks of infiltration from the intravenous administration of this drug ... would be no different than the risk of infiltration from other intravenous drugs, except that the results of infiltration are more caustic and the need to stay out of sunlight [would be greater] if such an infiltration did occur.” Based on the medical records and the depositions of both the nurse who administered the Visudyne to Conner and Conner’s treating physician, Nurse Northington further opined that the IV administration of Visudyne was not properly monitored and that, once the infiltration had occurred, Conner’s treatment providers were negligent in having failed to cover the area and protect it from accidental exposure to sunlight. These negligent acts, according to Nurse Northington, proximately caused or contributed to Conner’s injury.
¶ 21. The trial court granted Conner’s motion to reconsider and denied Mid-South’s motion for summary judgment. Mid-South appealed, and, for the first time on appeal, argued that Nurse Northington was not qualified to serve as an expert based on this Court’s decision in Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645 (Miss.2009). The majority acknowledges that this argument was first presented on appeal, but reasons that the rule applied retroactively to exclude Nurse Northing-ton’s expert opinion. Maj. Op. at ¶ 15.
¶ 22. Vaughn held that nurses are explicitly prohibited from testifying as to medical causation. Id. at 652. In Vaughn, I dissented, reasoning that:
[T]he issue of whether a particular nurse, by virtue of his or her knowledge, skill, experience, training or education, possesses such ability is better determined by a case-by-case inquiry than by a broad, “one-size-fits-all” judicial pontification to the effect that no nurse in the world will ever be allowed to testify as to medical causation in any Mississippi court case. As is true of any other profession, the education, experience and understanding of nurses span a broad spectrum. We should not enunciate a hard and fast rule that permanently forecloses the possibility of any nurse’s being qualified to give expert testimony on medical causation in any and all cases that may arise in the future.
*1055 Id. at 656-57 (Kitchens, J., dissenting). I echo that same reasoning in the case sub judice inasmuch as “it is the scope of the witness’ knowledge and not the artificial classification by title that should govern the threshold question of admissibility.” Brown v. Mladineo, 504 So.2d 1201, 1202 (Miss.1987) (quoting Fitzmaurice v. Flynn, 167 Conn. 609, 356 A.2d 887, 892 (1975)). Other jurisdictions in both criminal and civil cases have agreed with the premise that nurses with the “proper training, expertise, and experience are qualified to give expert opinions on medical causation in appropriate circumstances.” Velazquez v. Commonwealth of Va., 263 Va. 95, 557 S.E.2d 213, 218 (2002).[3]
¶ 23. I find no basis in the language of Mississippi Rule of Evidence 702 “for any preference of licensed physicians for such medical testimony.” State v. White, 340 N.C. 264, 457 S.E.2d 841, 858 (1995) (holding that sexual assault nurse examiners are qualified to testify as to the cause of a physical injury despite not being licensed to diagnose illnesses or prescribe treatment).[4] Mississippi Rule of Evidence 702 provides that:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
In the case sub judice, it is clear that Nurse Northington met the requirements of Rule 702. We should not prohibit our *1056 trial judges and jurors from hearing and considering professional opinions of this quality.
¶ 24. Mississippi Rule of Civil Procedure 56(c) provides that summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” In order to withstand summary judgment, the party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” Whiting v. Univ. of S. Miss., 62 So.3d 907, 914 (Miss.2011) (quoting Miss. R. Civ. P. 56(e)).
¶ 25. Nurse Northington’s expert opinion was that Conner’s injury was proximately caused by Mid-South’s breach of the applicable standard of care owed to Conner in the IV administration of Visu-dyne. Because this expert should not be excluded on the necessary element of causation, I am of the opinion that Conner did not fail to establish a prima facie case of medical negligence. In this case, sufficient evidence exists to create genuine issues of material fact as to whether Nurse Hampton, the nurse who had administered Visu-dyne to Conner at Mid-South, had breached the appropriate standard of nursing care and whether such breach proximately caused Conner’s injury. Accordingly, summary judgment was not appropriate in this case. Thus, I would affirm the trial court’s judgment denying Mid-South’s motion for summary judgment.
KING, J., JOINS THIS OPINION.

. See also Mohajer v. Commonwealth of Va., 40 Va.App. 312, 579 S.E.2d 359, 364 (2003) (finding that a sexual assault nurse examiner need not be licensed to practice medicine to offer an expert opinion on the causation of injuries resulting from an alleged sexual assault); Parris v. Uni Med, Inc., 861 S.W.2d 694, 699 (Mo.App.E.D.1993) (finding no .error in trial court allowing nurses to testify as experts on the cause and treatment of bed sores); Mellies v. Nat'l Heritage, Inc., 6 Kan.App.2d 910, 636 P.2d 215, 224 (1981) (holding that when a proper foundation is laid as to the nurse's experience with bed sores, that nurse can "qualify as an expert as to causation and as to such parts of treatment and cure that are performed by such nurse.”).

. Our own Court of Appeals, in a criminal case in which the defendant was convicted of gratification of lust, rejected the defendant's argument that expert testimony by a sexual assault nurse examiner was erroneously admitted because it was beyond the scope of her qualifications. See Murray v. State, 20 So.3d 739, 741 (Miss.Ct.App.2009), cert. denied, 27 So.3d 404 (Miss.2010). In doing so, the court recognized that "nursing professionals routinely testify as to whether a victim’s injuries are consistent with a sexual assault.” Id. at 742 (citing Havard v. State, 988 So.2d 322, 332 (Miss.2008) (nurse testified that injuries received by minor victim were the result of sexual trauma); Adams v. State, 772 So.2d 1010, 1017 (Miss.2000) (nurse testified that the victim’s hymen was torn and that this injury was consistent with penetration by a penis, finger, or other object)). The appellate court held that the expert witness was an experienced emergency room nurse, had conducted numerous sexual assault examinations, and had personally conducted the examination of the victim; thus "her testimony assisted the jury and was both relevant and reliable.” Murray, 20 So.3d at 742.
I cite Murray, a case in which this Court unanimously voted to deny certiorari, to illustrate that I see no distinction in how Rule 702 should be applied in a civil versus a criminal case. Vaughn has the effect of precluding nurses from testifying as to medical causation even in the context of a criminal sexual assault case. See Vaughn, 20 So.3d at 652 ("We now explicitly hold that nurses cannot testily as to medical causation.”).