COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Ortiz and Raphael
Argued by videoconference


SHAWN LAMONTE ROBINSON

MEMORANDUM OPINION* BY
v.      Record No. 0036-22-1      JUDGE STUART A. RAPHAEL
AUGUST 23, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

Brent A. Jackson (Brent A. Jackson & Associates, P.C., on brief), for
appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


For various offenses that he committed against female clients when he worked as their

masseur, Shawn Lamonte Robinson was convicted of three counts of object sexual penetration

(in violation of Code § 18.2-67.2(A)(2)), seven counts of aggravated sexual battery by a massage

therapist (in violation of Code § 18.2-67.3(A)(5)), three counts of practicing a health profession

after his license was suspended (in violation of Code § 54.1-2409.1), and misdemeanor assault

and battery. Robinson challenges only his convictions for object sexual penetration and

aggravated sexual battery. He claims that the Commonwealth failed to prove that he used any

force, threat, or intimidation when he digitally penetrated one client, repeatedly, without her

consent. But our precedent establishes that force, threat, and intimidation inhere in a situation

like this one, where a massage therapist improperly touches a vulnerable client who lies frozen in

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fear. We also reject Robinson's claim that the Commonwealth failed to prove that he acted with the requisite sexual intent when he touched the five complaining witnesses on their vaginas and anuses. His intent was plain from his conduct, which left no room for any reasonable hypothesis of innocence.

BACKGROUND

Robinson's fourteen convictions stem from massages that he performed on five women from August 27 through December 15, 2020. Robinson appeals ten of those convictions: seven felony aggravated-sexual-assault convictions for massages performed on D.B., M.C., M.D., C.R., and C.W.[1]; and three felony object-sexual-penetration convictions based on a single massage session with C.R.

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

After receiving his license in 2017 from the Virginia Board of Nursing, Robinson worked as a massage therapist at several different massage studios in Virginia. From July 2020 until his arrest in December 2020, he was employed at Massage LuXe in Williamsburg.

As an employee, Robinson signed the "Massage LuXe Code of Professional Ethics," promising to "refrain from engaging in any sexual conduct, sexual activities or sexualizing behavior involving a client under any circumstances." The district manager and general manager

---

[1] We use the survivors' initials here to protect their privacy. *See Poole v. Commonwealth*, 73 Va. App. 357, 360 n.1 (2021).

- 2 -

of the massage studio where Robinson worked each testified that touching a client's vagina, anus, or "butt crack" was not a recognized form of treatment in the profession.

C.W. sought a massage at Massage LuXe on August 27, 2020. She undressed to her underwear and lay on the massage table on her stomach, covered by a sheet. During the massage, Robinson pulled up the sheet and started massaging her buttocks. He then put his fingers inside her underwear, moved them across her buttocks and down her inner thigh, and brushed against her vaginal lips. C.W. testified that she felt "very uncomfortable," "froze," and pulled her legs closer together. She did not know what to do. Afterward, C.W. told her husband, her housekeeper, and two other people what had happened. When she learned in December 2020 that Robinson had been arrested, she reported the incident to the police.

When M.D. visited Massage LuXe on October 6, she too received a massage from Robinson. M.D. lay naked on her back on the massage table, covered by a sheet. The massage began normally, but when M.D. turned onto her stomach, Robinson moved the sheet to expose her buttocks. Robinson massaged M.D.'s glutes and then touched the "rim" of her anus with both thumbs, prompting her to object. Although he moved to another area, he returned to her buttocks and touched her anus again. M.D. ended the session, left the room, and told her friend who accompanied her to the studio what had happened. M.D. testified without objection that she had training in massage therapy and that a therapist is "not supposed to touch" the genital area.

M.D. returned to Massage LuXe for another massage on October 28. This time she wore underwear that covered her entire buttocks, hoping that doing so would prevent any further inappropriate touching. Near the end of the session, Robinson tried to remove her underwear, but she pulled them back up. He moved on to her feet, but then he returned and tried to take off her underwear again. M.D. ended the massage and cancelled her membership. After seeing a news article about Robinson, she too reported the incidents to the police. When asked why she

left a tip for Robinson after both massages, M.D. said that she tips people even after bad service because "that's how people make their living."

D.B. received a massage from Robinson on October 27. She lay naked on her back, covered with a sheet. The massage began normally, until she turned onto her stomach. After removing the drape, Robinson used "a lot of extra oil" and rubbed "very close to [her] private area" for "a long time." He then "poke[d]" her outer vaginal lips at least "ten times" using an "in and out" motion. D.B. "made him stop" and left the studio. When she got home, she told her husband what had happened. Her husband testified that she looked "shocked" and said to him, "I think I was just violated." After seeing a news article about Robinson, she too reported the incident to police. When asked why she had left a tip for Robinson, D.B. said that she "was in shock" and "just wanted to get out of there."

Three days later, the Virginia Board of Nursing notified Robinson that it had summarily suspended his license to practice massage therapy based on sexual-assault complaints stemming from incidents in 2018 and 2019 at other massage studios in Virginia. The notice recited that, while employed in February 2018 as a massage therapist with Massage Envy in Chesterfield County, Robinson penetrated a client's vagina with his finger and his penis. In a second incident, Robinson reportedly used his fingers to partially penetrate another female client's anus. The notice also identified two instances of misconduct in September 2019 at a Massage LuXe studio in Richmond. In the first, Robinson reportedly attempted to digitally penetrate a client's anus, but she repelled him. In the second, the client complained that Robinson massaged her buttocks and came close to touching her genitals.

Robinson received that notice on November 4, 2020. Despite being informed that his license had been suspended, however, he continued to work as a massage therapist at the Massage LuXe in Williamsburg.

M.C. received a massage from Robinson in early December. As M.C. lay naked on her stomach, Robinson began massaging her lower back, then moved the sheet out of the way and massaged her buttocks for a long time. He moved down her legs and back up. He then went between her thighs and touched the outer lips of her vagina three or four times. After moving to her shoulders and neck, Robinson returned to her buttocks, touching her vagina again. Towards the end of the massage, he slid his hands up her sides and "grazed" the side of each breast. After seeing a news article about Robinson, M.C. called the police.

When C.R. received a massage in early December, she thought Robinson's methods were "out of line." She worried that Robinson was going to "penetrate" her, but she was uncertain if he "actually touched" her genitals. At one point, without any blanket covering her, he held her legs up in the air and spread them completely apart. C.R. came away thinking that she had to "set better parameters" next time. She returned for a massage on December 15. This time, she instructed Robinson to touch "nothing below the waist," something he confirmed he understood.

The massage began with C.R. lying on her stomach, covered by a drape. C.R. heard Robinson pump oil into his hand, but he did not rub it onto her body. Instead, Robinson began messaging her buttocks with only one hand. From the sounds she heard, she believed he was using his other hand to masturbate with the oil. As the survivor of an earlier trauma, she froze, afraid to look.

Robinson then removed C.R.'s underwear and bent her right leg until her right foot touched her left leg. Robinson massaged her buttocks more and more aggressively, closing in on her genitals. He then penetrated her vagina with his finger. She was too afraid to scream. Robinson was bigger than she was, and she feared he would punch her in the face or throw her to the floor. She froze, feeling "violated and scared." Robinson then moved his thumb "between [her] butt cheeks," pushing his thumb into her anus and sticking his finger into her vagina. C.R.

- 5 -

cried out "no," and pushed his hand away. The massage ended abruptly; Robinson removed C.R.'s socks (for no apparent reason) and announced, "your session is over."

C.R. got dressed, left a tip for Robinson at the front desk, and went home. She called her sister and emailed the manager of the massage business to report what had happened; she also contacted the police. Her body felt as if she had been "ripped or torn." She was in pain and bleeding. The Sexual Assault Nurse Examiner ("SANE") who saw her the next day found abrasions on C.R.'s posterior fourchette extending into her perineum and on her perineum extending into her anal folds.[2]

Robinson was arrested two days later, and Massage LuXe terminated his employment. His license to practice massage therapy was revoked on January 27, 2021.

After hearing the evidence below, the trial court denied Robinson's motion to strike and renewed motion to strike. The court convicted Robinson of seven felony counts of aggravated sexual battery by a massage therapist (three for M.C. and one each for C.W., M.D., D.B., and C.R.), three felony counts of object sexual penetration of C.R., three felony counts of practicing a health profession after a license suspension or revocation, and one misdemeanor assault and battery on M.D.[3]

Robinson was sentenced to incarceration for a total term of 135 years and 12 months, with 99 years suspended, for an active sentence of 36 years and 12 months. The court also directed Robinson to register as a sex offender.

---

[2] This fact appears in the SANE report in the sealed portion of the record. We unseal that record only as to the specific facts mentioned in this opinion; the rest of that report and the other records sealed by the trial court will remain sealed. *See Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[3] The court acquitted Robinson of an assault-and-battery charge stemming from his massage of C.W, and of three charges relating to his massage of M.C.

STANDARD OF REVIEW

"We apply a deferential standard of review to challenges based on the sufficiency of the evidence, and the decision of '[t]he lower court will be reversed only if that court's judgment is plainly wrong or without evidence to support it.'" *Otey v. Commonwealth*, 71 Va. App. 792, 797 (2020) (alteration in original) (quoting *Cartagena v. Commonwealth*, 68 Va. App. 202, 207 (2017)). "[T]he relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).

ANALYSIS

Stating that his arguments here were not preserved in the trial court, Robinson's counsel asks that we address them to further the "ends of justice." Rule 5A:18. Having reviewed the trial transcript, however, we find that the arguments pressed here were adequately raised below. So we consider Robinson's claims on the merits.

*A. Object sexual penetration*

A person who "penetrates the labia majora or anus of a complaining witness," without consent and "by force, threat or intimidation," is guilty of object sexual penetration. Code § 18.2-67.2(A)(2). Robinson argues that the evidence does not show that he penetrated C.R.'s vagina or anus by force, threat, or intimidation. He argues that nothing established that he put C.R. in fear of bodily harm or "exercised sufficient dominion" over her "to 'overbear her will.'" He acknowledges C.R.'s testimony that she froze and was afraid, but he characterizes her fear as "internal" and arising from "prior experiences." He also asserts that C.R. actually showed "no fear or intimidation" because she left a tip for him at the front desk.

- 7 -

To support a conviction for object sexual penetration, "the force used by the defendant must be sufficient to accomplish the act as well as to overcome the will of the victim." *Bondi v. Commonwealth*, 70 Va. App. 79, 88 (2019) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 381 (2002)). "[W]e consider the totality of the circumstances when determining whether the sexual battery was accomplished using force." *Nelson v. Commonwealth*, 73 Va. App. 617, 624 (2021). "Virginia's appellate courts have repeatedly held in the context of sexual offenses 'that "force" [is defined to] include[ ] both actual and constructive force.'" *Id.* (alterations in original) (quoting *Martin v. Commonwealth*, 272 Va. 31, 34-35 (2006)). "Circumstances supporting a finding of force include the victim's relationship to the defendant, the aggressive nature of the defendant's behavior, and the victim's fear during and after the crime." *Bondi*, 70 Va. App. at 89. Further, "[t]he degree of resistance by the victim and, consequently, the degree of force required to overcome her will, 'necessarily depend[] on the circumstances of each case, taking into consideration the relative physical condition of the participants and the degree of force manifested.'" *Wactor*, 38 Va. App. at 382 (second alteration in original) (quoting *Jones v. Commonwealth*, 219 Va. 983, 986 (1979)).

Importantly, "'no positive resistance' by the victim need be demonstrated if it appears that the crime was effected without . . . consent." *Id.* (quoting *Jones*, 219 Va. at 986). Indeed, "[i]ntimidation may occur without threats" and "may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." *Mohajer v. Commonwealth*, 40 Va. App. 312, 322 (2003) (en banc) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)).

This Court in *Mohajer* considered the crime of object-sexual penetration in the context of a client who was assaulted by her massage therapist. We described the complaining witness as being "in a vulnerable position," "lying on a table, naked except for a towel wrapped around her

body." *Id.* We affirmed the object-sexual-penetration conviction because the evidence demonstrated intimidation—the victim "was naked and alone in the presence of someone she believed she could trust . . . and whom she allowed to touch her body only because of his position as masseur." *Id.* at 323. Those "circumstances left her vulnerable and susceptible to the psychological pressure and control exercised by [the defendant] in committing the assault." *Id.*

The same is true here. C.R. told Robinson not to touch her "below the waist." Robinson first acknowledged that restriction, then disregarded it. He removed her underwear and massaged her buttocks anyway and did so "more and more aggressively." Robinson then penetrated her vagina with his finger, causing C.R. to freeze and leaving her feeling violated and scared. *Accord Mohajer*, 40 Va. App. at 322-23 (noting the victim was "confused and did not know 'how she was supposed to react or what [she] was supposed to do'" (alteration in original)); *Bondi*, 70 Va. App. at 89-90 (noting the victim was "'completely frozen and in shock' while appellant digitally penetrated her vagina"). Although C.R. wanted to scream, she was afraid to because Robinson was larger and stronger. *See Mohajer*, 40 Va. App. at 323 (stating that victim's "body 'just locked down'"; she was "'scared to death,' because she 'had no idea what was going to happen next'"). Robinson then penetrated her anus with his thumb and her vagina with his finger, causing her to cry out "no" and to push his hand away. After the incident, C.R. experienced pain and bleeding. *Accord Bondi*, 70 Va. App. at 90 (finding force sufficient when victim "experienced considerable physical pain as a result of appellant's acts"). That evidence sufficed to prove that Robinson penetrated C.R.'s anus or vagina three times against her will by force, threat, or intimidation.

Noting that several of the complaining witnesses (including C.R.) left a tip for him at the front desk, Robinson argues that tipping reveals the absence of any force, threat, or intimidation. But Robinson provides no legal authority for the unsupportable notion that the trial judge had to

view tipping as proof that the client retroactively consented to being penetrated or to other inappropriate touching. Other inferences are far more plausible. A sexual-assault survivor might suffer from disassociation, behaving as if nothing had happened despite her severe trauma. Or she might just want to get away as fast as possible, afraid that failing to tip as usual might risk unwanted questioning that could delay her escape.

In this case, the trial court "relied heavily on the credibility and demeanor of the witnesses," crediting C.R.'s testimony about her ordeal. "[C]onclusions of the fact finder on issues of witness credibility may only be disturbed on appeal if we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299-300 (1984)). Robinson does not come close to meeting that demanding standard here.

### B. Aggravated sexual battery

To obtain a conviction for aggravated sexual battery by a massage therapist, the Commonwealth must prove that the defendant intentionally touched a client's "genitalia, anus, groin, breast, or buttocks" with "the intent to sexually molest, arouse, or gratify any person" and that the touch "is not a recognized form of treatment in the profession."[4] Code §§ 18.2-67.3(A)(5) (defining "Aggravated sexual battery"), 18.2-67.10(2) (defining "Intimate parts"), 18.2-67.10(6) (defining "Sexual abuse").

Robinson's first argument misfires. He claims that the Commonwealth failed to prove that he used "force, threat or intimidation" to accomplish the touchings for which he was

---

[4] The Commonwealth also must prove that the defendant was a massage therapist or person purporting to be a massage therapist, the conduct occurred during a massage therapy session, and the client had not expressly consented to the touching. Code § 18.2-67.3(A)(5). Robinson does not dispute, however, that the Commonwealth proved each of those elements here.

convicted. But that is not a required element of aggravated sexual battery when committed by a massage therapist under subsection (A)(5) of Code § 18.2-67.3. *Cf.* Code § 18.2-67.3(A)(4) (requiring "force, threat or intimidation" in other specified circumstances); Code § 18.2-67.2(A)(2) (requiring "force, threat or intimidation" to prove object sexual penetration).

Robinson next argues that the evidence failed to prove that he touched any of the women's intimate areas with the "intent to sexually molest, arouse, or gratify any person," as required by the definition of sexual abuse in Code § 18.2-67.10(6). "Proving intent by direct evidence often is impossible." *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 470 (2000)). But circumstantial evidence of a defendant's intent may be shown by his conduct, and the trier of fact "may infer that [the defendant] intends the natural and probable consequences of his acts." *Campbell v. Commonwealth,* 12 Va. App. 476, 484 (1991) (en banc)); *see also Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (same); *Brown v. Commonwealth*, 68 Va. App. 746, 788 (2018) (same). Circumstantial evidence "is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983).

For instance, we held in *Carter v. Gordon*, 28 Va. App. 133 (1998), that a teacher's intent to sexually molest, arouse, or gratify could be inferred from the fact that he used his hands to "cup" the breasts of his sixth-grade student. *Id.* at 144. "[W]hether the required intent exists is generally a question of fact for the trier of fact." *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (quoting *Brown*, 68 Va. App. at 787). And the trial court's findings of fact bind us unless plainly wrong. *Nicholson v. Commonwealth*, 56 Va. App. 491, 502 (2010).

The evidence presented here sufficed under *Carter* for a reasonable factfinder to conclude that Robinson touched the intimate parts of each of the five complaining witnesses with an intent

- 11 -

to sexually molest, arouse, or gratify. Robinson signed a statement as a Massage LuXe employee pledging to "refrain from engaging in any sexual conduct, sexual activities or sexualizing behavior involving a client under any circumstances." Two different Massage LuXe managers testified that touching a client's vagina, anus, or "butt crack" was not a recognized form of treatment in the profession.

Yet when massaging C.W., Robinson put his fingers inside her underwear, moving them across her buttocks and down her inner thigh, brushing her vaginal lips. He touched the rim of M.D.'s anus with both thumbs. He touched D.B's outer vaginal lips at least ten times with an "in and out" motion. He touched the lips of M.C.'s vagina three or four times, returning later to touch her vagina again.[5] And he penetrated C.R.'s anus and vagina with his fingers. What is more, his offenses against M.C. and C.R. occurred in December 2020, the month after he learned that the Virginia Board of Nursing suspended his license pending its disposition of sexual-assault complaints from 2018 and 2019 based on similar misconduct.

To his credit, Robinson's counsel conceded at oral argument that if the evidence sufficed to show that Robinson intentionally touched the complaining witnesses' intimate areas, no reasonable hypothesis of innocence could excuse that conduct here. We appreciate counsel's candor. Because the evidence supported that Robinson's sexual touching was intentional, the trial court properly found that Robinson "acted with the necessary intent." *Carter*, 28 Va. App. at 144.

---

[5] M.C. described three or more incidents of inappropriate sexual touching during her massage session, but the record does not show which acts correspond to the three aggravated-sexual-battery indictments. Because Robinson does not assign any error to that ambiguity, however, we do not address it.

CONCLUSION

In short, having considered all of Robinson's arguments on the merits, we find no error in the trial court's rulings.

*Affirmed.*