Present: All the Justices

BOBBY RAY COMBS

v.  Record No. 980024    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        November 6, 1998
NORFOLK AND WESTERN
RAILWAY COMPANY

             FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                     Robert P. Doherty, Jr., Judge


     In this appeal, we consider two issues raised in an action

brought under the Federal Employer's Liability Act (the FELA),

45 U.S.C. §§ 51-60.  First, we address whether the trial court

abused its discretion in allowing a biomechanical engineer to

state an expert opinion regarding the cause of the plaintiff's

injury.  Second, we consider whether the trial court erred in

allowing the defendant to present evidence of safer work methods

the plaintiff could have used in performing the task that

resulted in his alleged injury.

     In November 1992, Bobby Ray Combs allegedly was injured

while employed as a sheet metal worker for the Norfolk and

Western Railway Company (N&W).  At the time of his alleged

injury, Combs was in the process of fabricating two stainless

steel templates for the bottom of a porcelain toilet which was

to be installed in a passenger railroad car.  Combs and a co-

worker, Siegfried Hofmann, began work on the project on a

Friday. At the end of the day, they left the unfinished project on Hofmann's workbench.

When work resumed on Monday, Hofmann was assigned to another task, leaving Combs to finish fabricating the templates. When Combs attempted to turn the toilet onto its side to remove the underlying template, the toilet slipped from his grasp. As Combs lunged forward to catch it, he felt a sharp pain in his lower back. One month later, Combs underwent surgery for a ruptured lumbar disc.

Combs filed suit against N&W under the FELA, alleging that N&W failed to provide safe and suitable tools and equipment, safe methods of work, and sufficient manpower to perform the assigned task. In response, N&W denied that it violated any duty owed to Combs, and alleged that Combs' injury was caused solely by his own negligence or, in the alternative, that Combs' negligence significantly contributed to the accident.

Before trial, Combs filed a motion in limine, requesting that the court prohibit N&W from presenting evidence of safer, alternative methods Combs could have used to perform his task. Combs argued that the holding in Stillman v. Norfolk and Western Railway Co., 811 F.2d 834 (4th Cir. 1987), should be applied to prohibit N&W from asserting that he could have performed the job in a safer manner. The trial court denied Combs' motion, ruling that since Combs contended N&W was negligent in assigning a

2

"two-person" job to one person, N&W was entitled to present evidence that the task could have been performed safely by one person.

At trial, a metal table that was the same width and height as Hofmann's workbench was placed in the courtroom and admitted in evidence as an exhibit. However, the table was shorter in length than Hofmann's workbench and had a smooth surface, while Hofmann's workbench had a grooved pattern on its surface for use in measuring materials. A porcelain toilet that was the same model as the one involved in the accident, and a stainless steel template of the same size as the one made by Combs, were placed on the table. During the trial, several witnesses referred to these exhibits and used them to illustrate aspects of their testimony.

The following evidence was presented at the trial. Combs testified that, when he departed from work on Friday, he left the toilet on top of the first unfinished template. He stated that he had to move the toilet off the template Monday morning to complete the job. Combs also stated that he twice told his supervisor, Kersey R. Harper, that he needed Hofmann's assistance to complete the job, but was told that Hofmann was unavailable and that Combs should just do the best he could.

Harper testified that Combs and Hofmann had completely finished one template on Friday. Both Harper and the general

foreman, David Carr, testified that the work remaining to be done on the second template on Monday required only one worker and did not require Combs to lift the toilet or to turn it on its side. Both Harper and Carr testified and demonstrated that one person easily could move the toilet off the template by "scoot[ing]" or rocking the toilet.

Harper, Carr, and one of Combs' co-workers, David Jones, all testified that it was common practice for employees to ask another employee to help them when assistance was needed. Jones stated that he was working at his workbench about twelve feet away from Combs at the time of the accident, but that Combs did not request his assistance.

Carr also stated that N&W had a standing rule that if an employee believed a task could not be done safely, he was required to halt the task and to report the problem to a supervisor. Combs acknowledged that he was aware of this policy. According to Harper, although Combs inquired twice about Hofmann's whereabouts on the morning in question, Combs did not state that he needed help in completing the job.

Michael Shinnick, who has a doctoral degree in education, testified as an expert in ergonomics. He stated that when the toilet slipped to a 45° angle, Combs "absorbed or had the control of a hundred and ten pounds of force in his right hand 24 inches in front of his body."

4

Dr. Robert Widmeyer, an orthopedic surgeon, testified that Combs had three degenerative discs prior to his injury. He stated that, to a reasonable degree of medical certainty, Combs ruptured a disc when he engaged in the twisting movement in attempting to catch the falling toilet. Dr. Curtiss Mull, an orthopedic surgeon who examined Combs at the request of N&W, testified that this particular event could have caused Combs' ruptured disk.

N&W presented the testimony of Daniel J. Schneck, Ph.D., who qualified as an expert witness on the subject of biomechanical engineering. Schneck's educational background included a bachelor's degree in mechanical engineering, a master's degree in medical science, and a Ph.D. in fluid, thermal, and aerospace sciences, with a specialization in biomedical engineering. Although he had completed all the academic work required for a medical degree, Schneck had not completed a medical internship or residency and was not licensed to practice medicine. He is a professor of engineering, science, and mechanics and is the director of the biomedical engineering program at Virginia Polytechnic Institute and State University.

Combs asked the trial court to prohibit Schneck from stating an opinion regarding the cause of Combs' ruptured disc. Combs argued that since Schneck was not a medical doctor, he was

not qualified to render an "expert medical opinion" about the cause of a particular injury. The trial court denied Combs' motion, ruling that such testimony was within Schneck's expertise.

Using Combs' own description of how he turned the toilet onto its side, Schneck testified that the twisting movement used by Combs resulted in a "G load" of 0.194 on Combs' spine. Schneck explained that one G load is equal to a person's body weight, and that ".194 G's [is] 0.194 G's over and above the one G." Schneck compared the load force placed on Combs' spine to the force generated by starting a lawn mower, "plopp[ing] down" into a chair, or hopping off a step.

Schneck's testimony also included the following colloquy with N&W's counsel:

> Question: Would the task of one person turning a commode such as this on its side pose a danger of rupturing a disk beyond that normally associated with normal daily activities?
>
> Answer:   Not at all.
>                    . . . .
>
> Question: [A]re you aware that Mr. Combs did have degeneration in his lower three disks which would explain, I guess, a lot of what you are talking about?
>
> Answer:   That is correct.  It is conceivable that the degeneration on this particular day was of such a nature that there was material that had oozed out of the disk and because of the way he turned, the way he moved, whatever it was that he physically did, he became aware that there was a

6

> problem in his back.
>
> It became symptomatic, but it didn't rupture the disk at that instant in time.
>
> . . . .
>
> A very benign activity can cause a ruptured disk to become symptomatic.

At the conclusion of the evidence, the jury returned a verdict in favor of N&W. The trial court overruled Combs' motion to set aside the verdict and entered judgment in favor of N&W. This appeal followed.

On appeal, Combs argues that the trial court erred in allowing Schneck to give an opinion regarding the cause of Combs' ruptured disk. Combs does not challenge Schneck's qualifications as a biomechanical engineer, and agrees that the field of biomechanics is related to the field of medicine. Combs also concedes that Schneck was qualified to testify about the compression forces placed on Combs' spine at the time of the injury. Combs objects, however, to Schneck's testimony concerning the cause of Combs' ruptured disc, arguing that only a licensed, medical doctor is qualified to render such an opinion.

In response, N&W contends that since the study of biomechanics includes the application of scientific and engineering principles to determine forces exerted on the human

body, Schneck was qualified to state an expert opinion regarding the cause of Combs' injury. N&W also asserts that Schneck's entire testimony was admissible to rebut Michael Shinnick's testimony concerning the forces placed on Combs' spine at the time of his injury. We disagree with N&W.

The issue whether a witness is qualified to render an expert opinion is a question submitted to the sound discretion of the trial court. Poliquin v. Daniels, 254 Va. 51, 57, 486 S.E.2d 530, 534 (1997); King v. Sowers, 252 Va. 71, 78, 471 S.E.2d 481, 485 (1996); Tazewell Oil Co. v. United Va. Bank, 243 Va. 94, 110, 413 S.E.2d 611, 620 (1992). The record must show that the proffered expert witness has sufficient knowledge, skill, or experience to render him competent to testify as an expert on the subject matter of the inquiry. King, 252 Va. at 78, 471 S.E.2d at 485; Griffett v. Ryan, 247 Va. 465, 469, 443 S.E.2d 149, 152 (1994); Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979). The fact that a witness is an expert in one field does not make him an expert in another field, even though the two fields are closely related. Tazewell Oil Co., 243 Va. at 110, 413 S.E.2d at 620; VEPCO v. Lado, 220 Va. 997, 1005, 266 S.E.2d 431, 436 (1980).

The practice of medicine includes the diagnosis and treatment of human physical ailments, conditions, diseases, pain, and infirmities. See Code § 54.1-2900. The term

8

"diagnose" is defined as "to determine the type and cause of a health condition on the basis of signs and symptoms of the patient."  Mosby's Medical Dictionary 480 (5th ed. 1998).  Thus, the question of causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine.

Schneck was qualified at trial as an expert in the field of biomechanical engineering and he was competent to render an opinion on the compression forces placed on Combs' spine at the time of the incident.  However, Schneck was not a medical doctor and, thus, was not qualified to state an expert medical opinion regarding what factors cause a human disc to rupture and whether Combs' twisting movement to catch the toilet could have ruptured his disc.

We disagree with N&W's contention that this testimony was admissible to rebut Shinnick's testimony concerning the compression forces caused by Combs' actions at the time of the incident.  Shinnick did not state an opinion concerning the cause of Combs' ruptured disc.  Therefore, his testimony did not provide a basis for the admission of medical causation testimony, and we hold that the trial court abused its discretion in allowing Schneck to testify on such matters.

While this error requires reversal of the trial court's judgment, we will address Combs' remaining arguments because

9

they involve issues that will arise in the retrial of this case. Combs contends that the trial court erred in allowing N&W to present evidence to prove that the assigned task could have been performed safely by one person.  He argues that the holding in Stillman v. Norfolk and Western Railway Co., 811 F.2d 834 (4th Cir. 1987), should have been applied in this case to prohibit the introduction of such evidence.  There, the Court of Appeals prohibited an employee in a FELA action from introducing evidence of safer equipment his employer could have provided to do a job.  811 F.2d at 838.  Combs argues that since primary negligence and contributory negligence are subject to the same proof requirements, the Stillman ruling should apply to prevent N&W from showing that Combs could have performed his job in a safer manner.  We disagree with Combs' argument.

In Stillman, the employee sought to present testimony that use of an overhead crane would have provided a safer method for installing gears in railway cars rather than the forklift provided by the employer.  Id.  The court ruled that such evidence was inadmissible because the relevant inquiry was whether the employer had exercised reasonable care for the employee's safety, not whether the employer could have provided safer equipment for performing the job.  Id.

We hold that Stillman is inapplicable here because that ruling was based on a party's attempt to prove negligence "in a

10

vacuum" by showing that safer equipment could have been used, irrespective of whether the equipment actually used met the standard of reasonable care.  In contrast, N&W's evidence was directly relevant to the issues presented by the parties' pleadings, namely, whether N&W exercised reasonable care in providing manpower to do the job and whether Combs exercised reasonable care in performing his assigned task.  Combs asserted that N&W was negligent in assigning a "two-person" job to one person.  To defend against that claim, N&W was entitled to show that the task assigned to Combs could be performed safely by one person, and that Combs chose an unsafe method of performing a task when safer alternative methods were available.

Our conclusion is supported by the decisions of other courts in FELA actions.  For example, in Gish v. CSX Transportation, Inc., 890 F.2d 989 (7th Cir. 1989), an employee alleged, among other things, that the employer railroad failed to provide him adequate help and equipment to lift a manhole cover.  The railroad denied any negligence, and presented evidence that the employee could have asked his supervisor for help or used one of several safe alternative methods to remove the manhole cover, rather than failing to use proper care in "yanking" at the cover himself.  Id. at 991-93.  On the basis of this evidence, the court approved the jury's finding that the

11

employee's own negligence partially contributed to his injury. Id. at 993.

Likewise, in Wadiak v. Ill. Cent. Ry. Co., 208 F.2d 925 (7th Cir. 1953), evidence of a plaintiff's choice of an improper method of moving a cargo barrel formed the basis for the court's reversal of a judgment for the employee. The plaintiff injured himself when he and another employee decided to move the barrel by hand without seeking additional manpower or using nearby equipment that the plaintiff admitted was adequate to perform the job. Id. at 927-28. The court held that, as a matter of law, the evidence showed that the plaintiff was injured because he voluntarily adopted an unsafe, rather than a safe, method of performing his job. Id. at 929; see also Dixon v. Penn Cent. Co., 481 F.2d 833, 836 (6th Cir. 1973); McGivern v. Northern Pac. Ry. Co., 132 F.2d 213, 217-18 (8th Cir. 1942).

These decisions illustrate the principle that an employee's voluntary choice of an unsafe method to perform a job, instead of alternative safe methods available to him, may be admitted in evidence in defense of a claim that the employee's injuries were proximately caused by the employer's negligence. Combs' complaint, however, is not limited to this question of law. He further argues that N&W's use of demonstrative evidence to present proof of safe alternative methods was inadmissible because the demonstrations were performed under circumstances

12

not substantially similar to the conditions existing in the N&W shop on the day Combs was injured.  N&W responds that Combs' own use of the table and toilet in questioning a witness precludes the complaint he raises here.  We agree with N&W.

In his redirect examination of Kersey Harper, Combs' counsel engaged in the following exchange:

> Question: Walk over here and show these folks how you were holding the commode on . . . the day when you tried to do the recreation.  Were you cradling it or holding it differently?
>
> Answer:   I was not cradling it.
>
> Question: No. Let's you and I show the jurors how you were doing it . . . . You were holding it like this, right?
>
> Answer:   Yes, sir.
>
> Question: And like this, right?
>
> Answer:   Right.
>
> Question: So that you would have hold of it when you tilted it up, and if it slipped off like it did then and got away from you on this table, you would have a good firm grip on it.  You tried to recreate, took your hand off in one of the pictures and did like that, didn't you?
>
> Answer:  I tried to recreate where he told me that he had his hands.

The record indicates that the table used at trial, which was introduced into evidence by N&W and used throughout its case, was substantially different from the workbench Combs used

13

on the day of the accident.  However, we do not reach the merits of Combs' claim that use of the various exhibits as demonstrative evidence constituted reversible error, because Combs used the same exhibits in presenting demonstrative evidence on his own behalf.  Generally, when a party unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence.  Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992); Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970); Hoier v. Noel, 199 Va. 151, 155, 98 S.E.2d 673, 676 (1957); see Brooks v. Bankson, 248 Va. 197, 207, 445 S.E.2d 473, 478-79 (1994).  While the presentation of rebuttal evidence does not give rise to such a waiver, Combs' use of the exhibits during re-direct examination of Harper went beyond mere rebuttal.  See Hubbard, 243 Va. at 9-10, 413 S.E.2d at 879.

For these reasons, we will reverse in part, and affirm in part, the trial court's judgment, and remand the case for a new trial consistent with the principles expressed in this opinion.

Affirmed in part,
reversed in part,
and remanded.

14