Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Millette, JJ., and Lacy, S.J.

JOSEPH C.B. HOLLINGSWORTH

OPINION BY
v.  Record No. 090041        JUSTICE LAWRENCE L. KOONTZ, JR.
                                    February 25, 2010
NORFOLK SOUTHERN RAILWAY COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

In this appeal, we consider whether a podiatrist is
qualified to render an expert opinion as to the causation of a
human physical injury.  Specifically, we consider whether the
circuit court erred in granting the defendant's motions in
limine to exclude the testimony of two podiatrists on the
basis that they were not medical doctors and, thus, were not
qualified to render expert opinions as to the cause of the
plaintiff's alleged physical injuries.  Consequently, we also
consider whether the court erred in granting the defendant's
motion for summary judgment based upon the court's rulings on
those motions in limine.

BACKGROUND

The material facts are not in dispute.  Joseph C.B.
Hollingsworth filed a negligence action under the Federal
Employers' Liability Act, 45 U.S.C. §§ 51-60 (2006 & Supp. I
2007), against his former employer Norfolk Southern Railway
Company ("Norfolk Southern").  Hollingsworth claimed that his
job duties for Norfolk Southern "required him to walk on large

ballast[1] and debris scattered throughout the yards and areas he was working, causing injury to his . . . ankles, and feet."

Hollingsworth designated two licensed podiatrists, Steve G. Steffan and Charles Zelen, as expert witnesses.  The podiatrists would have testified that they treated Hollingsworth's foot condition, and that the injuries they treated were caused by repeated walking on irregular surfaces such as the ballast in the rail yards.  Norfolk Southern filed motions in limine, arguing that the podiatrists could not testify as to the causation of Hollingsworth's alleged injuries because neither is a medical doctor.  The circuit court granted the motions in limine, finding that an opinion concerning the causation of a human physical injury involves making a diagnosis, which may be conducted only by a medical doctor.

Norfolk Southern then moved for summary judgment, arguing that because the podiatrists could not testify concerning medical causation and because the time to designate experts had elapsed, Hollingsworth could not prove that his alleged injuries were caused by Norfolk Southern's negligence.  The circuit court granted the motion for summary judgment, finding

---

[1] Ballast is rock laid on the roadbed of a railroad track for the purpose of providing foundation and facilitating drainage.  See Norfolk S. Ry. Co. v. Rogers, 270 Va. 468, 472, 621 S.E.2d 59, 61 (2005); Norfolk S. Ry. Co. v. Trimiew, 253 Va. 22, 25, 480 S.E.2d 104, 107 (1997).

that without the medical causation testimony of the podiatrists, Hollingsworth could not prove an essential element of his case.  We awarded Hollingsworth this appeal.

DISCUSSION

The principles guiding our resolution of the issues presented in this appeal are well established.  "Generally, a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, or experience to make the witness competent to testify as an expert on the subject matter at issue."  Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002).  "Whether to permit a witness to qualify as an expert on a given subject matter is an issue submitted to the discretion of the trial court, and on appeal we will not reverse the trial court's ruling in this regard unless it plainly appears that the witness was not qualified."  Conley v. Commonwealth, 273 Va. 554, 560, 643 S.E.2d 131, 134 (2007).

"Notwithstanding these general principles, we have concluded that certain subject matter is exclusive to a particular field of expertise such that only witnesses trained as professionals in that field of expertise are qualified to render expert opinions regarding that subject matter."  Fitzgerald v. Commonwealth, 273 Va. 596, 602, 643 S.E.2d 162, 164 (2007).  Thus, we have repeatedly held that only a medical

doctor is qualified to testify about the cause of a human physical injury. See Id. at 602, 643 S.E.2d at 164-65; Conley, 273 Va. at 561, 643 S.E.2d at 134; Norfolk & W. Ry. Co. v. Keeling, 265 Va. 228, 235, 576 S.E.2d 452, 457 (2003); John v. Im, 263 Va. 315, 321, 559 S.E.2d 694, 697 (2002); Combs v. Norfolk & W. Ry. Co., 256 Va. 490, 496-97, 507 S.E.2d 355, 358-59 (1998). But see Velazquez, 263 Va. at 104, 557 S.E.2d at 218-19 (allowing a sexual assault nurse examiner ("SANE") to express an opinion as to the cause of physical injuries in the context of a sexual assault).

In Combs, we held that the trial court abused its discretion in permitting a biomechanical engineer to give an expert opinion regarding the cause of the plaintiff's ruptured disc. 256 Va. at 497, 507 S.E.2d at 359. Noting that "the question of causation of a human injury is a component part of a diagnosis," and that the statutory definition of the "practice of medicine" contained in Code § 54.1-2900 includes making a "diagnosis," we concluded that the question of causation of a human injury is a part of the practice of medicine. Id. at 496, 507 S.E.2d at 358. Thus, we established the general rule that only a medical doctor is qualified to give expert testimony about the cause of human physical injury. Id.

4

In John, we held that the trial court properly ruled that that a licensed Ph.D. psychologist was not qualified to give an opinion that the plaintiff had suffered a "mild traumatic brain injury . . . as a result of the impact and the sudden acceleration-deceleration of her head" in a motor vehicle accident.  263 Va. at 318, 321, 559 S.E.2d at 695, 697.  We again reasoned that an opinion regarding the causation of a human physical injury is a component part of a diagnosis, which is a part of the practice of medicine, and because the psychologist was not a medical doctor, he was not qualified to give an expert opinion regarding the cause of the plaintiff's injury.  Id. at 321, 559 S.E.2d at 697.

In Keeling, we concluded that the trial court did not abuse its discretion in disallowing the testimony of a biomechanical engineer "that fistulas were generally caused by infection that caused bone or tissue to deteriorate."  265 Va. at 235, 576 S.E.2d 457.  Stressing that Combs and John stand for the proposition that "only a medical doctor could give expert testimony about the cause of a human physical injury," we held that the testimony given by the biomechanical engineer came within the prohibition recited in Combs and John.  Id.

More recently, in Conley, we considered whether the trial court erred in permitting a licensed clinical social worker to testify concerning the diagnosis and treatment of post-

5

traumatic stress disorder ("PTSD"). 273 Va. at 557, 643 S.E.2d at 132. Similarly, in Fitzgerald, we considered whether the trial court erred in permitting a licensed professional counselor to testify that the alleged victim suffered from PTSD. 273 Va. at 600, 643 S.E.2d at 163. In both cases, Combs and John were distinguished by the fact that those cases involved causation issues regarding human physical injuries, while Conley and Fitzgerald involved PTSD, a mental disorder. See Conley, 273 Va. at 561, 643 S.E.2d at 135 ("Combs and John do not . . . establish a categorical rule . . . that only a medical doctor may qualify to render an expert opinion regarding the diagnosis of PTSD or any other recognized mental disorder.") Nonetheless, in reaching these decisions, we applied the same statutory analysis employed in Combs and John, finding that both licensed clinical social workers and licensed professional counselors were statutorily authorized to "diagnose" mental disorders and, thus, were qualified to provide expert testimony. See Fitzgerald, 273 Va. at 602-03, 643 S.E.2d at 165 (citing Code § 54.1-3500); Conley, 273 Va. at 562, 643 S.E.2d at 135 (citing Code § 54.1-3700).

In the present case, Hollingsworth asserts that the intent of the General Assembly is that podiatrists may engage in the diagnosis of ailments involving the foot and ankle and,

6

thus, are qualified under Combs and its progeny to render an expert opinion as to the cause of physical injuries to the foot and ankle. Alternatively, Hollingsworth contends that this Court should, as in Velazquez, recognize an exception to the general rule that only a medical doctor is qualified to testify as an expert regarding the cause of a human physical injury.

Norfolk Southern responds that the General Assembly has drawn a clear distinction between the definition of the "practice of medicine," which includes "diagnosis," and the "practice of podiatry," which does not. Consequently, Norfolk Southern maintains that podiatrists are not qualified to testify as experts regarding the cause of a human physical injury. We agree with Norfolk Southern.

Code § 54.1-2900 defines the scope of practice for medical doctors and podiatrists. The "[p]ractice of medicine" is defined as "the prevention, diagnosis and treatment of human physical or mental ailments, conditions, diseases, pain or infirmities by any means or method." Code § 54.1-2900 (emphasis added). In contrast, the "[p]ractice of podiatry" is defined as "the medical, mechanical and surgical treatment of the ailments of the human foot and ankle." Id. (emphasis added).

7

When interpreting statutes, we must ascertain and give effect to the General Assembly's intention, which is to be ascertained from the plain meaning of the words used, unless a literal interpretation would result in a manifest absurdity. See Crawford v. Haddock, 270 Va. 524, 528, 621 S.E.2d 127, 129 (2005); Horner v. Dep't of Mental Health, Mental Retardation, & Substance Abuse Servs., 268 Va. 187, 192, 597 S.E.2d 202, 204 (2004). Moreover, "we must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute." Halifax Corp. v. First Union National Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001). "Additionally, when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional." Id.

Applying these principles to the statutory definitions at issue in this case, we find that while both medical doctors and podiatrists may engage in the treatment of a physical injury to the human foot and ankle, only a medical doctor may engage in the diagnosis of that injury so as to qualify to render an expert opinion regarding the causation of that injury. Accordingly, Steffan and Zelen were qualified to render an expert opinion concerning the treatment they

8

provided to Hollingsworth.  The podiatrists, however, are not medical doctors and, thus, were not qualified to render an expert opinion as to the causation of Hollingsworth's alleged injuries.[2]

Hollingsworth, however, contends that the word "medical" in the definition of the practice of podiatry means that the General Assembly intended to incorporate the practice of medicine definition into the definition of podiatry.  An analysis of the context in which the word "medical" is used suggests otherwise.  See City of Virginia Beach v. Board of Supervisors of Mecklenburg County, 246 Va. 233, 236-37, 435 S.E.2d 382, 384 (1993) (when determining statutory intent, the context may be examined by considering other language used in the statute).

The "[p]ractice of podiatry" definition describes the forms of treatment–medical, mechanical, and surgical–a

---

[2] The statutory scheme related to chiropractors further supports our analysis.  The definition of the "[p]ractice of chiropractic" does not contain the word "diagnosis."  See Code § 54.1-2900.  Thus, in accord with our prior holdings, chiropractors would be prohibited from giving medical causation testimony.  The General Assembly, however, has enacted Code § 8.01-401.2, which provides that a chiropractor "may testify as an expert witness in a court of law as to etiology, diagnosis, prognosis, and disability . . . ."  (Emphasis added.)

The General Assembly has not enacted similar legislation relating to podiatrists; however, we take notice of proposed legislation that would amend and reenact the definition of podiatry.  See S.B. 82, Va. Gen. Assem. (Reg. Sess. 2010); H.B. 723, Va. Gen. Assem. (Reg. Sess. 2010).

podiatrist can use in treating ailments of the human foot and ankle. Code § 54.1-2900. Surgical treatment generally involves the repair of the foot and ankle by an operative procedure. Mechanical treatment generally involves repair or rehabilitation by a device, such as ankle braces or footpads. Medical treatment generally involves treatment by use of medicine. Simply put, the word "medical" modifies "treatment." It does not mean that a podiatrist's scope of practice is defined as broadly as that of a medical doctor. Furthermore, if the General Assembly intended the "[p]ractice of podiatry" to be equivalent to the "[p]ractice of medicine," it could have easily used the same language in defining the two practices. Instead, it clearly chose different language. Again, "[w]e must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute." Halifax Corp., 262 Va. at 100, 546 S.E.2d at 702.

We also reject Hollingsworth's contention that because podiatrists are members of the "[h]ealing arts" they may diagnose ailments involving the foot and ankle. See Code § 54.1-2903. The term "[h]ealing arts" is defined broadly as the "arts and sciences dealing with the prevention, diagnosis, treatment and cure or alleviation of human physical or mental ailments, conditions, diseases, pain or infirmities." Code

10

§ 54.1-2900. This definition is a general "catch-all" meant to encompass all healthcare practitioners, including respiratory care practitioners, radiologic technologists, athletic trainers, and various others who would not be qualified to render an expert opinion as to the cause of a physical injury. See Code § 54.1-2903 ("Any person shall be regarded as practicing the healing arts who actually engaged in such practice as defined in this chapter . . . ." (emphasis added)). In a situation where one statute speaks to a subject generally and another deals with that subject specifically, the more specific statute prevails. See Crawford, 270 Va. at 528, 621 S.E.2d at 129; Frederick County School Board v. Hannah, 267 Va. 231, 236, 590 S.E.2d 567, 569 (2004). Thus, we conclude that the specific definition of the "[p]ractice of podiatry" prevails over the general language of the "[h]ealing arts."

We also decline to recognize another exception to the general rule that only a medical doctor may render an expert opinion regarding the cause of a human physical injury. In Velazquez, we held that although the SANE was not a medical doctor, she was qualified to render an expert opinion concerning the "causation of injuries in the context of an alleged sexual assault." 263 Va. at 104, 557 S.E.2d at 218. As we subsequently explained in John:

11

> Because our holding in Velazquez is limited to the unique context of a SANE's expert opinion concerning the causation of injuries in a sexual assault case, that holding does not change the general rule . . . that only a medical doctor may give an expert opinion about the cause of a physical human injury.

263 Va. at 321 n.2, 559 S.E.2d at 697 n.2. (emphasis added). We are of opinion that, unlike the circumstances in Velazquez, the circumstances of the present case do not warrant an exception to the general rule. Velazquez, 263 Va. at 103-04, 557 S.E.2d at 218.

To allow podiatrists to testify as experts regarding the causation of human physical injuries would require us to add "diagnosis" to the statutory definition of the "[p]ractice of podiatry." Such amendatory action must be left to the General Assembly. See Carter v. Nelms, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963) ("We must determine the legislative intent by what the statute says and not by what we think it should have said"); Virginia Transit Co. v. Tidd, 194 Va. 418, 425, 73 S.E.2d 405, 409 (1952) ("It is not the function of the [C]ourt to legislate").

CONCLUSION

For these reasons, we hold that the circuit court did not err in granting Norfolk Southern's motions in limine to exclude the medical causation testimony of the two podiatrists. Accordingly, we will affirm the circuit court's

12

judgment awarding summary judgment in favor of Norfolk Southern.

<u>Affirmed.</u>

CHIEF JUSTICE HASSELL dissents.