PRESENT: All the Justices

TANISHA JUANIKA BATES
                                        OPINION BY
v.  Record No. 130259        JUSTICE LEROY F. MILLETTE, JR.
                                     JANUARY 10, 2014
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                     Craig D. Johnston, Judge

     In this appeal, we consider whether the circuit court

properly applied Code §§ 19.2-182.3 and 19.2-182.7 to its

findings of fact in determining that Tanisha Juanika Bates,

found not guilty of arson by reason of insanity, required

commitment to inpatient hospitalization.

                        I.   Background

     Bates lived in a six unit apartment building in a multi-

building complex in the City of Manassas, Virginia.  While in

her apartment, Bates ignited her t-shirt by laying it on the

burner of her stove, then carried it to the bedroom, and set

the t-shirt on the bed.  She locked her door and sat down on

the floor of the bedroom with the intent to remain in the

burning building and kill herself, but as the flames grew she

changed her mind.  Bates exited the apartment building and

notified her neighbors of the fire.  Bates had a loaded firearm

in the apartment at the time of the fire and she later told

investigators that she had tried to use the gun to kill herself

the night prior but it had not worked properly.

Bates was indicted for arson in violation of Code § 18.2-77. The Circuit Court of Prince William County found Bates not guilty by reason of insanity and remanded her to the temporary custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services ("Commissioner") for an evaluation of treatment options: inpatient hospitalization or release with or without conditions. See Code § 19.2-182.2. In accordance with the requirements of Code § 19.2-182.2, one psychiatrist and one clinical psychologist performed the evaluation and separately prepared reports for the court, defense counsel, the Commonwealth, and the Prince William County Community Services Board ("CSB"). Dr. Jyothi Racha, the psychiatrist, prepared a report that recommended conditional release with outpatient treatment. Dr. Abigail W. Cobey, the licensed clinical psychologist, recommended inpatient hospitalization.

Dr. Racha's recommendation of conditional release triggered a portion of Code § 19.2-182.2 which provides, "[i]f either evaluator recommends conditional release or release without conditions of the acquittee, the court shall extend the evaluation period to permit the hospital in which the acquittee is confined and the appropriate community services board or behavioral health authority to jointly prepare a conditional release or discharge plan, as applicable, prior to the

2

hearing." In accordance with Code § 19.2-182.2, the circuit court extended Bates' temporary custody to allow for further evaluation and the creation of a conditional release plan.

The Northern Virginia Mental Health Institute ("NVMHI"), where Bates was confined, and the CSB prepared Bates' court-ordered conditional release plan. The conditional release plan proposes that Bates is able to live on her own and attend outpatient treatment. However, no appropriate Virginia residence had been located at the time of the plan's creation. The conditional release plan therefore requires that Bates remain hospitalized at the NVMHI until an appropriate place of residence in Virginia is secured, and provides that the CSB will coordinate changes to Bates' residence and provide case management for her medication and treatment.

At the request of the Commissioner, the Forensic Review Panel prepared and submitted to the circuit court a report containing treatment and release recommendations for Bates. The Commissioner created the Forensic Review Panel pursuant to Code § 19.2-182.13 to "ensure that (I) release and privilege decisions for [acquittees] appropriately reflect clinical, safety and security concerns; (II) standards for . . . conditional release [of acquittees] and release planning have been met, and (III) expert consultation is provided to treatment teams working with [acquittees]." The Panel

concluded that Bates' continued delusions, risk of suicide, lack of substantial response to treatment, and history of deadly and dangerous behavior indicated that Bates "cannot be safely managed in the community at this time."  The Panel recommended continued commitment to inpatient hospitalization with "gradual preparation for release."

A hearing was held "to determine the appropriate disposition of the acquittee" in accordance with Code §§ 19.2-182.3 and 19.2-182.7.  After reviewing the conditional release plan and hearing testimony and argument, the circuit court found Bates in need of inpatient hospitalization by order entered on November 7, 2012 and committed her to the custody of the Commissioner.

Bates appealed the circuit court's decision and we granted review of the following assignment of error:

> The circuit court erred when it ordered Ms. Bates to inpatient hospitalization rather than to conditional release because it incorrectly applied the standards articulated in sections 19.2-182.3 and 19.2-182.7 of the Virginia Code to its own findings of fact.

## II.  Discussion

### A.  Standard of Review

Bates contends that the circuit court misapplied Code §§ 19.2-182.3 and 19.2-182.7 to determine that she required commitment to inpatient hospitalization.  It is well

4

established that "an issue of statutory interpretation is a pure question of law which we review de novo."  Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).  When reviewing the statutory language, the Court is "bound by the plain meaning of that language[, and] must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity."  Id. (citations omitted).

B.    Code § 19.2-182.3

The first of the statutes at issue, Code § 19.2-182.3, provides that the circuit court shall commit a defendant acquitted of a crime by reason of insanity "if it finds that [s]he has mental illness or intellectual disability and is in need of inpatient hospitalization."  The circuit court is to base its decision upon "consideration" of the following four factors:

> 1. To what extent the acquittee has mental illness or intellectual disability. . . ;
>
> 2. The likelihood that the acquittee will engage in conduct presenting a substantial risk of bodily harm to other persons or to himself in the foreseeable future;
>
> 3. The likelihood that the acquittee can be adequately controlled with supervision and treatment on an outpatient basis; and

5

> 4. Such other factors as the court deems relevant.

Code § 19.2-182.3.

Bates contends that, although the circuit court properly considered factor 1 of the Code § 19.2-182.3 evaluation, it subsequently erred by ignoring the remaining factors. The Commonwealth contends that the circuit court considered each of the four factors of the Code § 19.2-182.3 evaluation. We agree with the Commonwealth and find that the circuit court properly evaluated each of the four factors of Code § 19.2-182.3 in reaching its decision to commit Bates to inpatient hospitalization.

First, the circuit court made a clear finding of mental illness and evaluated the extent of her illness in satisfaction of factor 1 when it concluded that Bates suffers from a mental illness of such a severity that it led her to burn down the apartment complex in which she was living.

The circuit court also considered factor 2, indicating its acceptance of medical professionals' opinions that "absent treatment, medication, and supervision and monitoring, there is a substantial . . . and unacceptable risk that she will relapse in some fashion with the risk of the same thing happening." The court recognized that Bates has placed herself and others in danger by setting her apartment on fire in the past, and

that there is a substantial risk that she will do so again. We find that these statements demonstrate that the circuit court considered whether Bates was likely, absent sufficient monitoring and treatment, to place herself or others in substantial risk of bodily harm.

In evaluating factor 3, the circuit court acknowledged that, according to the NVMHI and the CSB, Bates was "ready to leave" inpatient hospitalization. However, the court also found that there is currently no means for controlling her on an outpatient basis. The court held that the CSB had not provided any "mechanism by which they can assist in conditional release," and that "there is no appropriate outpatient supervision and treatment reasonably available." Considering the options available to it, the court stated:

> Once she gets out, what's going to happen? And if she goes to Ohio, that's unacceptable. If she gets out and she is thrown into the community with no job, no place to live.
> Or I continue where she is and try to structure some plan that doesn't fit anything [the CSB] do[es] on a routine basis or I order them to let her out three hours a day, even though they don't have any way to supervise her. And it's not in [the CSB's] jurisdiction, so who is she going to report to and who is going to go get her and who is going to take her to that job and bring her back from that job, the practical implementation of it.

Thus, in satisfaction of factor 3, the circuit court thoroughly evaluated whether the CSB could adequately control Bates with supervision and treatment on an outpatient basis and determined that the necessary treatment and supervision was not available.

The circuit court also considered the proposition that Bates return to her family in Ohio on unconditional release. The court rejected the proposition because such a plan would "present[] an unacceptable risk that she will have a falling out with [her family] and who knows what will happen in Ohio."

Therefore, the circuit court completed a thorough evaluation of each of the factors required by Code § 19.2-182.3 to determine that Bates required commitment to inpatient hospitalization.

C.   Code § 19.2-182.7

The second statute at issue, Code § 19.2-182.7, requires a circuit court, any time it considers the acquittee's need for inpatient hospitalization, to order conditional release of the acquittee if it finds that each of the following four factors have been met:

> (i) based on consideration of the factors which the court must consider in its commitment decision, [s]he does not need inpatient hospitalization but needs outpatient treatment or monitoring to prevent [her] condition from deteriorating to a degree that [s]he would need inpatient hospitalization;

(ii) appropriate outpatient supervision and treatment are reasonably available;

(iii) there is significant reason to believe that the acquittee, if conditionally released, would comply with the conditions specified; and

(iv) conditional release will not present an undue risk to public safety.

Code § 19.2-182.7 also specifies that "[t]he court shall subject a conditionally released acquittee to such orders and conditions it deems will best meet the acquittee's need for treatment and supervision and best serve the interests of justice and society."

Bates contends that the circuit court erroneously relied solely upon the recommendations included in the conditional release plan prepared by the NVMHI and the CSB to determine that the elements of Code § 19.2-182.7 were not satisfied. Bates further argues that Code § 19.2-182.7 places the burden on the circuit court, not mental health evaluators and the community services board, to find an appropriate conditional release plan. Bates alleges that the circuit court, by refusing to acknowledge this statutory burden, limited Bates' options for conditional release and caused her unnecessary commitment to inpatient hospitalization. We do not agree.

As addressed in our consideration of the circuit court's evaluation of Code § 19.2-182.3, the court completed a thorough

evaluation of the supervision and treatment options before it, and determined that no appropriate supervision and treatment options were available.  The court found that inpatient hospitalization was necessary for the safety of Bates and the public.  Therefore, Bates' circumstances failed to satisfy each of the elements required for conditional release under Code § 19.2-182.7.

Moreover, Code § 19.2-182.7 does not, by its plain language, place a duty on the circuit court to seek out an appropriate plan for the treatment of an acquittee through conditional release when the acquittee's circumstances do not satisfy the elements of Code § 19.2-182.7.  It is well established that "we must assume that the General Assembly chose, with care, the words it used in enacting the statute." Hollingsworth v. Norfolk S. Ry., 279 Va. 360, 366, 689 S.E.2d 651, 654 (2010)(quoting Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001)).  Code § 19.2-182.7 provides that "[t]he court shall subject a conditionally released acquittee to such orders and conditions it deems will best meet the acquittee's need for treatment and supervision and best serve the interests of justice and society."  (Emphasis added.)  We must assume that the General Assembly's specific reference to "a conditionally released acquittee" rather than "each acquittee" or "an acquittee" was

intentional.  We therefore hold that Code § 19.2-182.7 imposes upon the circuit court a duty to assign orders and conditions for an acquittee's treatment and supervision only when each element of Code § 19.2-182.7 is met and the acquittee is eligible for conditional release.  Accordingly, Code § 19.2-182.7 does not direct that the circuit court has an affirmative duty to locate an alternative residence that might make an otherwise unacceptable conditional release plan acceptable.

The statute does not require the circuit court to fashion an appropriate plan for Bates' outpatient treatment and supervision when it had already determined that Bates was not eligible for conditional release, and that she required inpatient hospitalization.  This result does not confine Bates to inpatient hospitalization indefinitely, nor does it preclude review of her commitment to inpatient hospitalization before her annual review.  Code § 19.2-182.6(A) provides, "[t]he Commissioner may petition the committing court for conditional or unconditional release of the acquittee at any time he believes the acquittee no longer needs hospitalization." (Emphasis added.)  Thus, pursuant to the statutory scheme, if the Commissioner at any time finds a suitable residence for Bates and an appropriate conditional release plan for her outpatient treatment and supervision, Code § 19.2-182.6(A) grants him the statutory right to petition the circuit court to

11

consider the new developments and request Bates' release from inpatient hospitalization.[*]

### III. Conclusion

For the aforementioned reasons, we will affirm the circuit court's application of Code §§ 19.2-182.3 and 19.2-182.7 to the present case and its determination that the particular circumstances warranted Bates' commitment to inpatient hospitalization.

Affirmed.

---

[*] The same Code provision recognizes that periodic review will be undertaken as required pursuant to Code § 19.2-182.5 and that the acquittee herself may petition for review of the commitment in any year where no annual review would otherwise be required.

12