COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Raphael and Senior Judge Clements
Argued at Richmond, Virginia

PUBLISHED

MICHAEL FOSTER

v.      Record No. 0996-24-2

SUSAN MCNAMARA

OPINION BY
JUDGE JEAN HARRISON CLEMENTS
OCTOBER 14, 2025

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Gary R. Hershner for appellant.

E. Brandon Ferrell (Kerrigan O'Malley; Carter & Shands, PC, on
brief), for appellee.


Michael Foster appeals the circuit court's judgment confirming the jury's award of

$2,500 for injuries he sustained when Susan McNamara rear-ended a car in which he was a

passenger.  Believing that his damages award was too low, Foster argues the circuit court erred

by failing to grant his motion for a mistrial based on McNamara's introduction of improper

evidence; excluding expert testimony he offered from a chiropractor about the causal link

between the accident and his injury; and denying his motion to set aside the verdict and order a

new trial.  We reverse and remand for a new trial because the circuit court erred by excluding the

expert witness testimony.

BACKGROUND

In 2002, Foster was shot multiple times in his torso.  One of the bullets caused damage to

his spinal canal and left shrapnel in his stomach.  Foster also suffered a concussion when he fell

backwards and struck his head on concrete.  Since suffering the gunshot wounds, Foster has

experienced pain in his lower back, problems with bladder control, and painful bowel movements. He walks with a cane.

In 2017, Foster was in a car accident in Maryland. He suffered a diaphragmatic hernia, which required surgery to repair. Since then, he has been unable to lift heavy objects. He also received a whiplash injury to his back and his neck that resolved within "a couple of months."

In May 2020, the car accident giving rise to this litigation occurred. Foster and his roommate, Corey Jackson, were at the back of a line at a drive-through restaurant; Jackson was driving, and Foster was in the passenger seat. As they waited, McNamara's car struck Jackson's car from behind. The collision caused Jackson's car to hit the van in front of it, bounce back and hit McNamara's car again, and then once again hit the van. Foster hit his head on the visor in front of him and then against the headrest of his seat. The cars sustained minor damage, but no one called police or paramedics to the scene, and Jackson and McNamara drove away.

Foster had a headache after the accident but did not seek immediate medical treatment. Later that day, however, he awoke from a nap with a migraine, which he described at trial as "very, very painful." He went to Chippenham Medical Center where he received treatment, including pain medication and an ice pack applied to his neck. He was discharged the same day.

The next month, Foster received further treatment at a musculoskeletal pain relief center called the Advanced Wellness Centre. He complained of headaches, vertigo, and pain in his neck, left shoulder, upper back, and middle back. Dr. William Roodman, a chiropractor, examined him. Dr. Roodman concluded that Foster had ligamentous instability in the cervical region of his spine and an injury to the upper thoracic region of his back. Dr. Roodman explained at trial that, in layman's terms, Foster had suffered a sprain in the ligaments of his neck and upper mid-back.

Thereafter, Foster began receiving treatments, including chiropractic adjustments and therapeutic massage. Between June 2020 and December 2023, Foster obtained approximately 180 treatments, primarily from Dr. Roodman at the Advanced Wellness Centre. Foster's symptoms improved over time, but his neck pain and headaches never fully subsided. Foster testified at trial that, despite his 2002 and 2017 injuries, he had no significant neck problems or headaches before the May 2020 accident. After the accident, Foster experienced sensitivity to the sun, which prevented him from walking his dog during the day. Foster was able to resume much of his daily activity sometime in 2023, but occasionally still felt pain in his neck, which he treated with an ice pack.

Foster sued McNamara for negligence, seeking $750,000 in damages. Before trial, Foster filed a motion *in limine* seeking to prevent McNamara from: (1) adducing evidence of any claims Foster pursued arising from injuries he sustained before the May 2020 accident and (2) claiming at trial that Foster sought to make McNamara pay personally for Foster's damages. The circuit court granted the motion, with the caveat that McNamara could elicit evidence about Foster's prior litigation or claims if Foster opened the door. The court further ordered that McNamara could introduce evidence about Foster's injuries from other accidents "if relevant."

At trial, McNamara admitted fault for the collision; thus, the only issue for the jury was the quantum of damages, if any, Foster was entitled to recover. The court made two evidentiary rulings relevant to this appeal. McNamara asked Foster on cross-examination whether he had "been on full disability since 2002" when he was shot. Foster replied, "No." McNamara then asked whether Foster was "approved for disability subsequent to being shot in 2002." Foster replied, "Yes." Foster objected and moved for a mistrial, arguing outside of the jury's presence that evidence of his having received disability payments was irrelevant and violated the collateral source rule. The court denied the motion but instructed McNamara to "steer clear of the money"

- 3 -

when asking about Foster's injury history. The court also issued a corrective instruction to the jury, explaining that the relevance of the line of questioning McNamara was pursuing was limited to helping the jury determine what injuries Foster sustained in the 2020 accident.

Foster offered expert testimony from Dr. Roodman about Foster's injury and treatments. Dr. Roodman qualified as an expert in the field of chiropractic, explaining that the primary focus of chiropractic is the treatment of musculoskeletal spine conditions through "hands-on techniques," whereas medical doctors concentrate on pharmaceutical and surgical intervention. Dr. Roodman further testified that his training involved the ability to read x-rays, radiographic reports, and electromyographic reports. Chiropractors use these reports, according to Dr. Roodman, to form opinions about a patient's injury and what treatment to provide.

McNamara did not object to Dr. Roodman's qualification as an expert, but did object to his testimony to the extent he would opine about the meaning of a certain diagnostic report called a "spinal kinetics study." The spinal kinetics study was prepared by a radiologist based on x-rays taken of Foster's neck at Dr. Roodman's office. Dr. Roodman planned to use the report to support his opinion testimony about the nature and cause of Foster's injury. Citing *John v. Wong Shik Im*, 263 Va. 315, 321 (2002), McNamara argued that only a medical doctor may offer expert testimony about the issue of causation of a human injury and that Dr. Roodman, as a chiropractor, could not testify about the cause of Foster's neck injury using a report prepared by a medical doctor. The circuit court excluded the report and ruled that Dr. Roodman "may not render an opinion regarding the cause of [Foster]'s injury."

Dr. Roodman testified that x-rays of Foster's neck taken when Foster visited Advanced Wellness Centre on June 1, 2020, showed that Foster had ligamentous instability in his neck. He also testified about the treatment he provided to Foster, that the injury would likely cause Foster pain, and that the injury was permanent. Dr. Roodman did not opine about the cause of the

- 4 -

injury. After the conclusion of the evidence, Foster proffered that Dr. Roodman would testify that the 2020 accident caused the ligamentous instability injury in Foster's neck and that his need for chiropractic treatment resulted from that injury.

The court instructed the jury to award Foster damages, if any, based on "bodily injuries he sustained" from the accident "and their effect on his health," "physical pain and mental anguish," and "inconvenience."[1] The court also instructed the jury that it could award Foster damages if any pre-existing condition had been aggravated, but not for the pre-existing condition itself. The court gave an instruction over McNamara's objection directing the jury not to consider "[t]he presence or absence of insurance or benefits of any type . . . for either the plaintiff or the defendant" in making its decision. Foster sought $750,000. The jury awarded Foster $2,500 in damages.

Foster filed a post-trial motion to set aside the verdict and order a new trial. He argued that his testimony confirming he received disability payments after he was shot in 2002 and the circuit court's barring Dr. Roodman from testifying about the cause of Foster's injury both caused the jury to award lower damages than were justified. The court denied the motion and entered judgment against McNamara on the jury's verdict. Foster appeals.

ANALYSIS

I. The circuit court erred by excluding Dr. Roodman's expert testimony.

"The decision whether to admit or exclude expert testimony is one left to the sound discretion of the trial court, and this Court will reverse only upon a showing that the trial court abused its exercise of that discretion." *Kilpatrick v. Commonwealth*, 73 Va. App. 172, 187 (2021). A circuit court "by definition abuses its discretion when it makes an error of law.'" *Arch Ins. Co. v. FVCbank*, 301 Va. 503, 515 (2022) (quoting *Helmick Family Farm, LLC v. Comm'r of Highways*,

---

[1] Foster did not introduce evidence of his medical bills or request damages on that basis.

- 5 -

297 Va. 777, 794 (2019)).  "Insofar as admissibility of evidence 'rests upon the interpretation of a statute, that interpretation is a question of law subject to de novo review.'"  *Beckham v. Commonwealth*, 67 Va. App. 654, 658 (2017) (emphasis omitted) (quoting *Mason v. Commonwealth*, 64 Va. App. 599, 605 (2015)).

"A doctor of chiropractic, when properly qualified, may testify as an expert witness in a court of law as to etiology, diagnosis, prognosis, treatment, treatment plan, and disability, including anatomical, physiological, and pathological considerations within the scope of the practice of chiropractic as defined in § 54.1-2900."[2]  Code § 8.01-401.2(A).[3]  Despite this clear statutory language, the circuit court barred Dr. Roodman from testifying about the cause of

---

[2] Code § 54.1-2900 defines the "[p]ractice of chiropractic" as:

> the adjustment of the 24 movable vertebrae of the spinal column, and assisting nature for the purpose of normalizing the transmission of nerve energy, but does not include the use of surgery, obstetrics, osteopathy, or the administration or prescribing of any drugs, medicines, serums, or vaccines.  "Practice of chiropractic" includes (i) requesting, receiving, and reviewing a patient's medical and physical history, including information related to past surgical and nonsurgical treatment of the patient and controlled substances prescribed to the patient, and (ii) documenting in a patient's record information related to the condition and symptoms of the patient, the examination and evaluation of the patient made by the doctor of chiropractic, and treatment provided to the patient by the doctor of chiropractic.  "Practice of chiropractic" further includes recommending or directing patients on the use of vitamins, minerals, or food supplements.  "Practice of chiropractic" also includes performing the physical examination of an applicant for a commercial driver's license or commercial learner's permit pursuant to § 46.2-341.12 if the practitioner has (a) applied for and received certification as a medical examiner pursuant to 49 C.F.R. Part 390, Subpart D and (b) registered with the National Registry of Certified Medical Examiners.

[3] The trial occurred April 2, 2024, and Code § 8.01-401.2 was amended effective July 1, 2024.  2024 Va. Acts chs. 718, 764.  The amendment did not change the statutory language relevant to this case.  *Id.*

Foster's neck injury, citing the general rule that only medical doctors may offer expert testimony about the causation of physical human injuries. *See Hollingsworth v. Norfolk S. Ry.*, 279 Va. 360, 364 (2010). But Code § 8.01-401.2(A) provides an express exception to that rule; thus, the circuit court erred. The specific statutory exception for chiropractors controls over the general rule.

There is no categorical bar against experts other than medical doctors testifying on issues relating to human health, and the Supreme Court has recognized several exceptions to the general rule. *See Conley v. Commonwealth*, 273 Va. 554, 561-62 (2007). For example, a Sexual Assault Nurse Examiner, because of specialized training and experience, may render "expert opinions on medical causation in appropriate circumstances." *Velazquez v. Commonwealth*, 263 Va. 95, 103-04 (2002); *John*, 263 Va. at 321 n.2. To determine when an expert may testify on such matters, the Supreme Court often takes guidance from statutes defining the responsibilities and obligations of licensed healthcare professionals. *See Hollingsworth*, 279 Va. at 365. The general rule that only a medical doctor is qualified to give expert testimony about the cause of human physical injury is merely an application of this principle. *See id.* Because the statutory definition of "practice of medicine" includes the "diagnosis . . . of human physical or mental ailments," Code § 54.1-2900, and the medical definition of "diagnose" is "'to determine the type and cause of a health condition,'" the Supreme Court in *Combs v. Norfolk & Western Railway*, 256 Va. 490, 496 (1998), held, "the question of causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine," *id.* (quoting *Mosby's Medical Dictionary* 480 (5th ed. 1998)). Under this reasoning, a biomechanical engineer could not testify about the cause of a plaintiff's ruptured disc because he was not a medical doctor authorized to practice medicine as defined by the statute. *Id.* at 469-97. But in other situations, statutory guidance may point otherwise. Thus, in *Conley* and *Fitzgerald v. Commonwealth*, 273 Va. 596,

603 (2007), the Supreme Court "applied the same statutory analysis employed in *Combs*" to find "that both licensed clinical social workers and licensed professional counselors were statutorily authorized to 'diagnose' mental disorders and, thus, were qualified to provide expert testimony." *Hollingsworth*, 279 Va. at 365; *see* Code §§ 54.1-3500, -3700.

Here, although the statutory definition of the "[p]ractice of chiropractic" does not itself include "diagnosis," Code § 8.01-401.2(A) expressly allows chiropractors to testify as experts "as to *etiology*, *diagnosis*, prognosis, treatment, treatment plan, and disability, including anatomical, physiological, and pathological considerations within the scope of the practice of chiropractic as defined in § 54.1-2900." (Emphasis added). By authorizing chiropractors to testify about "etiology" and "diagnosis" that are "within the scope of the practice of chiropractic," Code § 8.01-401.2(A) expressly permits chiropractors to testify about the causation of a human physical injury.[4] Chiropractors, when properly qualified as experts, may opine about the cause of human physical injuries to the extent identifying the etiology of or providing a diagnosis for such injuries falls within the scope of the practice of chiropractic, as defined in Code § 54.1-2900. *See* Code § 8.01-401.2(A).

The circuit court barred Dr. Roodman from offering an opinion about the cause of Foster's injuries despite Dr. Roodman's unchallenged chiropractic expertise. This was error. The court should have allowed Dr. Roodman to opine about the cause of Foster's injuries to the

---

[4] The term "etiology" means "all of the causes of a disease or abnormality." *Etiology*, *Webster's Third New Int'l Dictionary Unabridged* (2021). The term "diagnosis" also involves analysis of causation. Indeed, the Supreme Court in *Hollingsworth* even pointed to the exception created for chiropractors by Code § 8.01-401.2(A) as evidence that podiatrists could *not* testify about the cause of injuries to the foot and ankle, because the statutory definition of "[p]ractice of podiatry" did not include "diagnosis" and the Code provided no similar exception for podiatrists. 279 Va. at 367 n.2. *But see* 2010 Va. Acts chs. 715, 725 (amending Code § 54.1-2900 after *Hollingsworth* to change the definition of the practice of podiatry to include the "prevention, diagnosis, treatment, and cure or alleviation of physical conditions, diseases, pain, or infirmities of the human foot and ankle").

extent the injuries fell within the scope of the "practice of chiropractic as defined in Code § 54.1-2900."[5]  Code § 8.01-401.2(A).  Dr. Roodman testified that Foster had sprains in the cervical and thoracic regions of his spine, which Dr. Roodman treated through chiropractic adjustments and therapeutic massage.  Code § 54.1-2900 defines the scope of chiropractic as including, in relevant part, "the adjustment of the 24 movable vertebrae of the spinal column[] and assisting nature for the purpose of normalizing the transmission of nerve energy."  Foster thus had an injury which Dr. Roodman treated within the scope of the practice of chiropractic, and Dr. Roodman should have been allowed to testify about the etiology and diagnosis of that injury under Code § 8.01-401.2(A).

Moreover, excluding Dr. Roodman's testimony was not harmless.  A "circuit court's error "'is presumed to be prejudicial unless it plainly appears that it could not have affected the result.'"'"  *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 94 (2014) (quoting *Hinkley v. Koehler*, 269 Va. 82, 92 (2005)); *see* Code § 8.01-678.  Improperly excluding expert testimony addressing "a central part of [a litigant's case] can represent a significant error because 'it is not a stretch to believe that scientific evidence is given great weight by jurors.'"  *Shaw v. Commonwealth*, ___ Va. ___, ___ (Apr. 17, 2025) (quoting *Welsh v. Commonwealth*, ___ Va. ___, ___ (Mar. 20, 2025)) (addressing improperly excluded expert testimony about the criminal defendant's mental condition offered to negate intent).

The jury's task was to fix damages.  To do so, the jury had to ascertain how much of Foster's pain, suffering, and inconvenience arose from the 2020 accident, as opposed to his pre-existing injuries.  Thus, the extent to which the 2020 accident caused Foster's neck and back

---

[5] At trial, McNamara objected that Foster's "migraines and headaches" were outside the scope of the practice of chiropractic.  The court did not rule on that objection, and neither party assigned error to any ruling based on that issue.  We express no opinion about whether those symptoms are within the scope of chiropractic.

injuries and headaches was a central issue. The circuit court's erroneous ruling caused

Dr. Roodman to testify only about the nature of the injury that Foster had when he visited

Advanced Wellness Centre in June 2020. Had Dr. Roodman been allowed to testify that the

2020 car accident caused Foster's neck and back injuries, the jury may have apportioned more of

Foster's pain and suffering to that accident and awarded greater damages. No other admitted

evidence addressed this point, and it does not plainly appear from the record that the erroneously

excluded testimony could not have affected the jury's verdict. *See Barkley v. Wallace*, 267 Va.

369, 374 (2004) (holding error in excluding evidence of medical bills was not harmless because

the jury could have viewed it as corroborative of subjective testimony rather than "merely

cumulative"); *Blue Stone Land Co. v. Neff*, 259 Va. 273, 279-81 (2000) (holding error in

excluding evidence of damages was not harmless because it might have produced a different

result on both the litigant's defenses and counterclaim). Thus, we will reverse the judgment and

remand the case to the circuit court for a new trial.

II. Evidence of Foster's receipt of disability payments is prohibited by the law of the case.

The erroneous exclusion of Dr. Roodman's expert testimony alone requires reversal of the

circuit court's judgment. Still, we address Foster's challenge to the testimony concerning his

disability payments because it is "likely to arise in a new trial on remand." *Emerald Point, LLC v.*

*Hawkins*, 294 Va. 544, 555 (2017). McNamara maintains that the evidence was proper. Foster

asserts that the circuit court erred by failing to grant him a mistrial after McNamara elicited his

testimony that he had received disability payments. A mistrial is appropriate only if "there is a

manifest probability that objectionable evidence or statements before the jury are prejudicial to

the adverse party." *Clark v. Chapman*, 238 Va. 655, 661 (1989) (quoting *Carter v. Shoemaker*,

214 Va. 16, 17 (1973)). "A trial court's ruling denying a motion for mistrial will be set aside on

- 10 -

appellate review only if the ruling constituted an abuse of discretion." *Gross v. Stuart*, 297 Va. 769, 774 (2019) (quoting *Allied Concrete Co. v. Lester*, 285 Va. 295, 308 (2013)).

Foster advances several arguments to support his assertion that evidence of his disability payments is inadmissible. It suffices here to note that the circuit court ruled below that McNamara was prohibited from adducing the evidence. The court also gave Jury Instruction 10, which directed the jury not to consider "insurance or benefits of any type." McNamara has not assigned error to either ruling, so she may not relitigate those issues on remand.

> Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

*Cromartie v. Billings*, 298 Va. 284, 306 (2020) (quoting *Kondaurov v. Kerdasha*, 271 Va. 646, 658 (2006)). The circuit court's unchallenged rulings prohibiting McNamara from eliciting evidence about Foster's receipt of disability payments and instructing the jury not to consider insurance or benefits in its decision are the law of the case and binding on the parties on remand.[6]

CONCLUSION

The circuit court erred by excluding Dr. Roodman's expert testimony, and that error may have prejudiced Foster. Accordingly, we reverse the circuit court's judgment and remand the matter for a new trial. On remand, McNamara is prohibited by the law of the case from adducing evidence of Foster's having received disability payments.

*Reversed and remanded.*

---

[6] "When a party might be tempted to raise foreclosed issues on remand, it is appropriate for an appellate court to identify them so that the scope of the remand is clear." *Slusser v. Commonwealth*, 74 Va. App. 761, 778 (2022).